UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RODNEY M. SAMUELSON, M.D.,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>MONUMENT HEALTH, INC.,<br>MONUMENT HEALTH RAPID CITY<br>HOSPITAL, INC.,<br><br>Defendants. | 5:23-CV-05091-CCT<br><br><br><br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR PROTECTIVE ORDER<br><br>Docket No. 18 |

## INTRODUCTION

Plaintiff Rodney M. Samuelson has sued Monument Health, Inc. and Monument Health Rapid City Hospital, Inc. (collectively "Monument" or defendants) for violating the Americans with Disabilities Act ("ADA") in his employment. See Docket No. 1. Dr. Samuelson now moves for a protective order. See Docket No. 18. Monument opposes the version of a protective order suggested by Dr. Samuelson. See Docket No. 23. The district court referred this motion to this magistrate judge for determination. See Docket No. 43 and 28 U.S.C. § 636(b)(1)(A).

**FACTS**

In order to give context to the motion, the court recites these facts from the complaint.  The court does not suggest the facts are true.

Dr. Samuelson, a neurosurgeon, was employed by Monument from 2015 to 2021.  In late 2019, Monument hired Dr. Cleve Trimble, a retired general surgeon, as a professional coach.[1]  One of Dr. Trimble's tasks was to work with Dr. Samuelson to "enhance [his] ability to interact effectively with the neurosurgery clinic support staff and to develop skills to collaborate with the clinic's leadership."  Docket No. 1 at 5.  Dr. Trimble allegedly told Monument that Dr. Samuelson suffered from something akin to autism and recommended accommodations for this condition.  Id. at 6.  Monument did not adopt Dr. Trimble's recommendations and Dr. Trimble resigned because of this.

Three years ago, this court resolved a dispute about taking Dr. Trimble's deposition pre-complaint in order to preserve his testimony.  See Samuelson v. Monument Health, Inc., 5:22-mc-25-KES (DSD Sept. 27, 2022).  The court ordered that his deposition be taken.  Id. at Docket No. 11 (Nov. 18, 2022).  That deposition never took place.  When it filed pleadings in that 2022 matter, Monument never argued that Dr. Trimble should be prevented from testifying, producing documents, or that his deposition or documents he produced should

---

[1] It is not clear to the court whether Dr. Trimble was hired to work exclusively with Dr. Samuelson or if he was hired to work with other Monument employees.  In earlier filings, Monument represented that Dr. Trimble was hired to provide "coaching for individual providers, departments, and teams."  See Samuelson v. Monument, 5:22-mc-25-KES, Docket No. 3 at 1.

be restricted in any way due to confidentiality concerns.  Id. at Docket No. 3 (Oct. 18, 2022).

The parties have been unable to agree about the proper terms of a protective order applicable to Dr. Trimble's deposition and any documents produced.  Monument wants the documents and deposition classified as "attorney's eyes only," so that Dr. Samuelson would not be permitted to view the documents or to attend Dr. Trimble's deposition (or read the transcript after the fact).  See Docket No. 24-12.

Dr. Samuelson wants Dr. Trimble's deposition and any documents he produces to be classified as "confidential," which would prohibit disseminating or copying of the material except under strictly controlled conditions and only to persons authorized to see them.  See Docket No. 18-1.  Under Dr. Samuelson's proposal, he himself would be able to view the documents and attend the deposition.  Id.

Dr. Trimble was required to sign a form confidentiality agreement prior to beginning work for Monument.  See Docket No. 20-2.  The agreement's stated purpose is to protect Monument's sensitive business information and its patients' protected health information.[2]  Id.  The agreement defines "sensitive business information" as including employee information and peer review or

_____

[2] The agreement actually states it is entered into between Dr. Trimble and "Regional Health," a prior name of Monument's.  See Docket No. 20-2.  The agreement recites that it is in part designed to protect sensitive business information of "Regional Health."  Id.  Neither party disputes that Monument has the power and authority to enforce the agreement though its name has changed.

quality of care information.  Id.  The restrictions of the agreement continued after Dr. Trimble's employment with Monument ended.  Id.  The court now considers the parties' positions.

### DISCUSSION

In general, the scope of discovery in federal civil cases is quite broad. See Fed. R. Civ. P. 26(b)(1).  See also 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").  The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2).

The trial court has significant discretion in either granting or denying a protective order and determining the amount of protection required.  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir. 1973).  Under Rule 26(c)(1), a court may grant a protective order only upon a showing of good cause by the moving party.  General Dynamics Corp., 481 F.2d at 1212.  The movant must articulate "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  Id. (additional citation and quotation marks omitted); see also Pansy v. Borough of Stroudsburg, 23 F.3d

4

772, 786 (3d Cir. 1994) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure.  The injury must be shown with specificity.  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.") (additional citations and quotation marks omitted).

The court must also consider "the relative hardship to the non-moving party should the protective order be granted."  General Dynamics Corp., 481 F.2d at 1212 (additional citation omitted).  If a protective order is warranted, the court has discretion to designate who may be present while discovery is conducted and to direct that confidential information not be revealed or be revealed only in a specified way.  Fed. R. Civ. P. 26(c)(1)(E) & (G).

Monument's primary argument is that Dr. Trimble's testimony and his documents constitute peer review materials protected under state statute.  That the entirety of Dr. Trimble's testimony and documents constitute peer review material seems a murky proposition indeed.  Dr. Samuelson states in his complaint that Dr. Trimble was hired to coach Dr. Samuelson how to interact with clinic support staff effectively and how to collaborate with clinic leadership.  See Docket No. 1 at 5.  Peer review materials usually consist of colleagues of a physician reviewing the physician's care of a patient.  Peer review does not usually involve examination of a physician's ability to relate to support staff and superiors.  Even if some of Dr. Trimble's work with Dr. Samuelson involved peer review protected subjects, it certainly seems as

though there is a lot of Dr. Trimble's work that potentially did not implicate peer review.

In any event, the same statute that creates the peer review privilege under South Dakota law specifically exempts from the purview of that privilege--for the involved physician--"information upon which a decision regarding the [physician's] staff privileges or employment was based." See SDCL § 36-4-26.1. Therefore, even if some part of Dr. Trimble's work with Dr. Samuelson fell within the purview of peer review, the statute allows Dr. Samuelson to access that information because it constitutes information, in part, on which his employment was based. Id.

Two sister district courts in our circuit have addressed "attorney's eyes only" designations in discovery and they have found such designations too restrictive. "Requiring an 'attorney's eyes only' designation is a 'drastic remedy given its impact on the party entitled to the information,' in that it prevents a party from reviewing documents with counsel, and can hamper the ability of the party to present his or her case." Gillespie v. Charter Communications, 133 F. Supp. 3d 1195, 1201-02 (E.D. Mo. 2015) (quoting Ragland v. Blue Cross Blue Shield of N.D., No. 1:12-CV-080, 2013 WL 3776495 at *1 (D.N.D. June 25, 2013)). The "attorney's eyes only" designation is generally reserved for trade secrets, patents or intellectual property and must be reserved for those rare instances where such a designation is truly required in order to protect confidentiality concerns. Id. at 1202.

In an employment dispute alleging racial discrimination, the <u>Gillespie</u> court refused to apply an "attorney's eyes only" restriction to a defendant-employer's production of prior employment complaints made to the company through its confidential EthicsPoint complaint system.  <u>Id.</u>  The court rejected as "conclusory" the defendant's suggestion that plaintiff would not abide by the confidentiality in that plaintiff had already discussed his case with coworkers.  <u>Id.</u>  The court did allow the defendant to redact the name of the person who had lodged the complaint.  <u>Id.</u>

As Monument acknowledges, there is a circuit split on the issue of whether the medical peer review privilege applies in a federal anti-discrimination employment lawsuit.  <u>See</u> Docket No. 23 at 10 (citing cases). The Eighth Circuit and the District of South Dakota have yet to rule on this issue.  This court agrees with the holdings of the Fourth, Seventh, Ninth and Eleventh Circuits which have held that the peer review privilege does not apply in a federal lawsuit founded on federal statutes.  <u>Virmani v. Novant Health, Inc.</u>, 259 F.3d 284, 293 (4th Cir. 2001); <u>Memorial Hosp. v. Shadur</u>, 664 F.3d 1058, 1062-63 (7th Cir. 1981) (per curiam); <u>Agster v. Maricopa Cnty.</u>, 422 F.3d 836, 839 (9th Cir. 2005); and <u>Adkins v. Christie</u>, 448 F.3d 1324, 1329 (11th Cir. 2007).

As the Seventh Circuit noted, the peer review privilege enjoys its highest protection in a medical malpractice action, where the plaintiff's claim arises out of an event that exists independent of the peer review process; where the

7

lawsuit is based on federal law and the plaintiff's claim arises out of the
disciplinary proceedings themselves, the privilege is entitled to less weight.
Shadur, 664 F.3d at 1062-63.

Here, the court concludes that Monument has not carried its burden of
demonstrating that the extreme measure of "attorney's eyes only" designation
is necessary as to Dr. Trimble's testimony and the documents he produces
pursuant to Dr. Samuelson's subpoena.  The court is satisfied that designating
that discovery "confidential" under the very comprehensive protective order
proposed by plaintiff provides adequate protection for the discovery to be
obtained through Dr. Trimble.  Accordingly, the court will sign the protective
order proffered by Dr. Samuelson.

## CONCLUSION

Based on the foregoing facts, law and analysis, it is hereby

ORDERED that plaintiff's motion for protective order [Docket No. 18] is
granted.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration
of this order before the district court upon a showing that the order is clearly
erroneous or contrary to law.  The parties have fourteen (14) days after service
of this order to file written objections unless an extension of time for good
cause is obtained.  FED. R. CIV. P. 6(b)(1), 72(a).  Failure to file timely objections

will result in the waiver of the right to appeal this ruling.  <u>United States v. Becerra</u>, 73 F.4th 966, 972-73 (8th Cir. 2023).  Objections must be specific in order to require review by the district court.  <u>Thompson v. Nix</u>, 897 F.2d 356, 357-58 (8th Cir. 1990).

DATED this 9th day of September, 2025.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge