UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RODNEY M. SAMUELSON, M.D., <br><br> Petitioner, <br><br> vs. <br><br> MONUMENT HEALTH, INC., MONUMENT HEALTH RAPID CITY HOSPITAL, INC., <br><br> Respondents. | 5:23-CV-05091-CCT <br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL AND DENYING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES |

**INTRODUCTION**

Plaintiff, Dr. Rodney M. Samuelson, sued Monument Health, Inc. and Monument Health Rapid City Hospital, Inc. (collectively, "Monument" or defendants) for violating the Americans with Disabilities Act ("ADA") during his employment.  See Docket No. 1.  Dr. Samuelson moves for (1) an order compelling defendants to answer interrogatory nos. 2, 3, and 4; (2) an order compelling defendants to produce documents responsive to request for production of documents (RFP) nos. 6 and 7; and (3) an order determining that defendants' responses to requests for admission nos. 2, 4, 12, 12, 14, and 18 did not comply with Federal Rule of Civil Procedure 36(a).  Docket No. 32, at 1. Dr. Samuelson also moves for attorney's fees and expenses incurred in making his motion to compel, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). Id.  Monument opposes these requests.  See Docket No. 36.

## FACTS

To give context to the motion, the court recites these facts from the complaint.  The court does not suggest the facts are true.

Dr. Samuelson was employed by Monument from July 13, 2015, to August 4, 2021.  Docket No. 1, at 2.  Dr. Samuelson suffered a traumatic brain injury from an accident in 1993, which caused symptoms akin to autism or Asperger's Syndrome.  Id. at 20.  In 2016, Monument's Chief Operating Officer, Paulette Davidson, regarded Dr. Samuelson as having a "personality issue," and Monument staff began discussing whether Dr. Samuelson had a personality disorder.  Id. at 4.

Lyssa Towl is a consultant who worked with Dr. Samuelson on efficiency and billing practices.  Id. at 4.  Monument granted Dr. Samuelson permission to work with Ms. Towl on certain projects.  Id.  To that end, Dr. Samuelson had a confidentiality agreement with Ms. Towl to protect against patient information disclosure.  Id.  Dr. Samuelson emailed patient information to Ms. Towl pursuant to the confidentiality agreement.  Id. at 5.  In mid-2018, Monument administrator Parul Bisla asked Dr. Samuelson to stop sharing protected health information with Ms. Towl, and Dr. Samuelson complied.  Id.

In November 2019, Dr. Samuelson met with several Monument administrators and physicians, who informed Dr. Samuelson that he needed to attend "Morbidity and Mortality meetings" with Dr. Thomas Fulbright.  Id. Dr. Samuelson had previously objected that Dr. Fulbright had treated him discriminatorily and unfairly at those meetings and elsewhere.  Id.

2

In late 2019, Monument hired Dr. Cleve Trimble as a professional coach. Id. One of Dr. Trimble's assigned roles was "to enhance Dr. Samuelson's ability to interact effectively with the neurosurgery clinic support staff and to develop skills to collaborate with the clinic's leadership." Id. In January 2020, Dr. Trimble informed Monument administrators and physicians that Dr. Samuelson had a personality issue akin to autism. Id. at 6. Dr. Trimble gave staff at Monument recommendations on how to accommodate Dr. Samuelson, but Monument failed to adopt those recommendations. Id. at 6. Dr. Samuelson claims that Dr. Trimble later resigned because of Monument's refusal to assist Dr. Samuelson with his condition. Id.

Dr. Samuelson's complaint lists other grievances as well. For instance, in early 2020, before Monument instituted mandatory COVID-19 masking policies, Dr. Steve Maser warned Dr. Samuelson that he was not allowed to wear a mask in the hospital because it was against hospital policy. Id. Dr. Samuelson also claims that he had more established patients than any other neurosurgeon at Monument. Id.

On December 29, 2020, Dr. Samuelson's counsel sent a letter to Monument's counsel stating that Dr. Samuelson is protected under the ADA due to his traumatic brain injury. Id. That letter also requested the following accommodations: (1) that Dr. Samuelson's brain injury and resulting effects be disclosed to the staff which he works with to promote understanding of his condition and its effects; (2) that his patient caseload be equitable with other doctors; and (3) that a nurse be dedicated to his clinic service. Id.

3

Monument's counsel sent an acknowledgement email the next day, confirming she received the letter and informing Dr. Samuelson that the ADA coordinator was out of the office.  Id. at 8.  On January 11, 2021, Monument informed Dr. Samuelson that his nurse, Catrine Engesser, would be moving to a new position and would no longer be assisting him.  Id.  Dr. Samuelson had previously informed Monument that Ms. Engesser was an exceptional employee whom Monument could not afford to lose.  Id. at 6.

On February 8, 2021, a Monument human resources administrator informed Dr. Samuelson that it was Monument's policy to not allow attorneys or advocates in ADA accommodation meetings.  Id. at 8.  Dr. Samuelson claims that Monument has no such policy.  Id.  The next day, Monument again denied Dr. Samuelson's request to have an attorney present during his ADA accommodation meeting.  Id.  In a letter dated February 26, 2021, Dr. Samuelson's counsel again requested to be present during the ADA accommodation meetings, telling Monument that good faith participation in the interactive process requires someone to interpret interpersonal communications for Dr. Samuelson.  Id. at 9.  Dr. Samuelson's counsel also requested a report from Dr. Trimble, but Monument denied the request.  Id.

On March 1, 2021, Monument notified Dr. Samuelson that a reasonable-accommodations meeting was scheduled for March 3rd without inquiring about Dr. Samuelson's availability.  Id.  Dr. Samuelson requested the meeting be rescheduled, and Monument cancelled the meeting.  Id.  Monument also informed Dr. Samuelson that it would make an exception to its advocate ban to

allow him to bring one advocate to the meeting, but the advocate could not be

an attorney.  Id.  Dr. Samuelson's counsel contacted Monument, objecting to

the attorney ban.  Id.  Dr. Samuelson's counsel also informed Monument that

Dr. Trimble was willing to provide a report upon Monument's request.  Id.

The first ADA accommodation meeting was held on April 19, 2021.  Id. at

10.  Dr. Samuelson was denied his advocate of choice, so he brought nurse

Joanne Gunderson.  Id.  Dr. Samuelson requested the following

accommodations

1. That he be allowed to take vacation time without Dr. Fulbright
   threatening to terminate him.

2. That Monument allow him to not attend Dr. Fulbright's Morbidity and
   Mortality meetings in person.

3. That he be treated fairly, not be retaliated against, and be provided
   support while building his practice and dealing with his
   disproportionately large workload.

4. That he be provided a dedicated nurse to his service.

5. That Monument not require face-to-face meetings with more than one
   administrator at a time, and that Dr. Samuelson be permitted to respond
   to administrators via email.

6. To be treated the same as other neurosurgeons employed by Monument,
   including an equitable workload, call duties, directives, and staffing.

7. That he be permitted to wear a mask, or modify a mask, in a way that
   does not irritate the skin cancer scar on his nose.

Id. at 10-11.

On May 3, 2021, a second accommodations meeting was held.  Id. at 11.
Monument once again did not allow Dr. Samuelson to bring his attorney.  Id.
In the meeting, Monument agreed that Dr. Samuelson was considered or
regarded as disabled.  Id. at 12.  The third and final accommodations meeting
took place on May 17, 2021.  Id.

Dr. Samuelson claims that Dr. Steve Maser leaked the ADA
accommodations information to Dr. Fulbright.  Id.  After that, an anonymous
complaint was filed against Dr. Samuelson.  Id.  Dr. Samuelson claims that
that complaint was made by Dr. Fulbright.  Id.  As a result of that complaint,
Dr. Maser ordered Dr. Samuelson to attend Dr. Fulbright's Morbidity and
Mortality meeting on July 7, 2021.  Id.

On July 12, 2021, Dr. Samuelson was brought into a meeting with three
Monument administrators.  Id. at 13-14.  At the meeting, the administrators
discussed an incident where Dr. Samuelson showed his girlfriend his work
schedule.  Id. at 14.  Dr. Samuelson maintains that his girlfriend did not see
any protected health information.  Id.  Dr. Samuelson allowed an administrator
to examine his cellphone and work calendar to ensure that it was HIPAA-
compliant.  Id.

On July 22, 2021, Monument's legal department began an investigation
into Dr. Samuelson's emails.  Id.  Later that week, IT finalized the audit of
Dr. Samuelson's emails and submitted it to Monument's in-house counsel.  Id.
The report indicated that ten emails from Dr. Samuelson's work email account
contained protected health information and violated HIPAA.  Id.  That report

was later sent to Monument's HIPAA Disciplinary Team, which categorized Dr. Samuelson's conduct as a "category five" violation, which is punishable by termination.  Id. at 15.

Upon returning to work from a short vacation on August 3, 2021, Dr. Samuelson was notified of a meeting scheduled the next day.  Id. at 16.  At that meeting, Monument administrators interviewed Dr. Samuelson regarding emails he sent from his work email to his personal email.  Id.  Following the meeting, Monument terminated Dr. Samuelson's employment for violating HIPAA and hospital policy.  Id.

On October 10, 2022, Monument sued in state court seeking a declaratory judgment that it terminated Dr. Samuelson legally.  Id. at 18. Dr. Samuelson sued Monument in federal court on December 22, 2023, alleging claims for ADA discrimination, failure to engage in the interactive process in good faith under the ADA, failure to accommodate under the ADA, and retaliation for making an ADA accommodation request.  Id. at 19-29.

Dr. Samuelson served Monument with interrogatories, RFPs, and requests to admit, the responses to which were unsatisfactory to Dr. Samuelson.  The parties held a meet-and-confer on December 10, 2024. Docket No. 33, at 3.  Dr. Samuelson later filed this motion to compel, which Monument opposes.  Docket Nos. 32 & 36.

## DISCUSSION

### A.    Discovery, Generally

"Discovery is a[n] investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case and . . . the veracity of those persons and purported evidence." Sentis Grp., Inc. v. Shell Oil Co., 763 F.3d 919, 926 (8th Cir. 2014).  Discovery aids in "narrowing and defining the disputed legal and factual issues." Williams v. McClain, 708 F. Supp. 1086, 1090 (W.D. Mo. 1989).  Information sought through discovery must be (1) nonprivileged; (2) "relevant to any party's claim or defense"; and (3) "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Discovery, like the evidence it seeks, "is relevant where it 'has a tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence.' " Lynch v. Experian Info. Sols., Inc., 581 F. Supp. 3d 1122, 1126 (D. Minn. 2022) (quoting FED. R. EVID. 401) (alteration in original).  But "unlike trial evidence, discovery is not curtailed by most of the limiting features of the Federal Rules of Evidence." Hirschman v. Agraria Ins., No. 4:23-CV-04123-KES, 2024 WL 4068745, at *2 (D.S.D. Sept. 5, 2024) (citation omitted).  "As such, its scope is 'extremely broad.' " Id. (quoting Richter v. XL Ins. Am., No. 4:23-CV-04094-CCT, 2024 WL 3461643, at *3 (D.S.D. July 18, 2024)).

"Whether requested discovery is proportional to the needs of the case is a fact-intensive inquiry." Pearson v. Royal Canin USA, Inc., No. 4:22-CV-04018-KES, 2023 WL 5916437, at *3 (D.S.D. Sept. 11, 2023).  A court must consider:

> [T]he importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Among the devices provided for by the Federal Rules of Civil Procedure to facilitate the exchange of discovery are interrogatories and RFPs.  See Fed. R. Civ. P. 33–34.  "Interrogatories allow a party to learn facts within an adversary's knowledge, 'so that questions of fact may be reduced to a minimum before trial.' " Stedillie v. Milford Cas. Ins., No. 4:23-CV-04048-KES, 2024 WL 449630, at *2 (D.S.D. Feb. 6, 2024) (quoting Onofrio v. Am. Beauty Macaroni Co., 11 F.R.D. 181, 184 (W.D. Mo. 1951)) (cleaned up).  RFPs allow a party to seek any document "in the responding party's possession, custody, or control," so long as the request is "within the scope of Rule 26(b)." FED. R. CIV. P. 34(a).

Should a party refuse to produce discovery under these rules, Rule 37 allows the requesting party to move for "an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iii)–(iv).  The movant "must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1)." Sprint Commc'ns Co. v. Crow Creek Sioux Tribal Ct., 316 F.R.D. 254, 263–64 (D.S.D. 2016) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)).

9

"If that showing is successful, the resisting party bears the burden of convincing the court otherwise." Woods v. JDHQ Hotels LLC, No. 4:23-CV-04026-RAL, 2024 WL 1886468, at *2 (D.S.D. Apr. 30, 2024) (citing Sprint Commc'ns Co., 316 F.R.D. at 264); see also Moses v. Halstead, 236 F.R.D. 667, 671 (D. Kan. 2006) ("When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance."). "If the court determines the requests to be outside the scope allowed by Rule 26(b)(1), it must fashion appropriate limits." Stedillie, 2024 WL 449630, at *3 (citing Fed. R. Civ. P. 26(b)(2)(c)(iii)).

## B.    The Contested Discovery

Dr. Samuelson seeks (1) an order compelling defendants to answer interrogatory nos. 2, 3, and 4; (2) an order compelling defendants to produce documents responsive to RFP nos. 6 and 7; and (3) an order determining that defendants' responses to RFA nos. 2, 4, 12, 12, 14, and 18 did not comply with Federal Rule of Civil Procedure 36(a). Docket No. 32, at 1. The court will address each in turn.

### 1. Interrogatories

"Rule 37(a)(3)(B)(iii) allows a party seeking discovery to move for a court order 'compelling an answer, designation, production, or inspection . . . if . . . a party fails to answer an interrogatory submitted under Rule 33.' " SPV-LS, LLC Transamerica Life Ins. Co. v. Bergman, No. CV 14-4092, 2017 WL 899882, at *5 (D.S.D. Mar. 6, 2017). "To the extent that it is not objected to, the

10

responding party must answer each interrogatory fully and under oath." <u>Id.</u>

(citing Fed. R. Civ. P. 37(b)(3)).

### a. Interrogatory No. 2

Interrogatory no. 2 states:

> 2. List any and all employees who have made an ADA reasonable-accommodation request in the last 10 years from the date of this document, indicating the date of the request, whether you required a form to be completed, whether you required medical evidence of the asserted disability and its cause, whether you rejected mental health professionals' information, and whether you prohibited the employee from bringing their attorney to any interactive process or meeting.

Docket No. 34-3, at 2. During the meet-and-confer conference, the parties

agreed to reduce the time period from 10 years to 5 years. Docket No. 33, at 7.

Monument sent the below objection and supplemental answer:

> OBJECTION: Defendants object to this Interrogatory because it is overly broadly (sic), unduly burdensome, and not proportional to the needs of the case in violation of Fed. R. Civ. P. 26(c).
>
> SUPPLEMENTAL ANSWER: Pursuant to the agreement of counsel, this request has been narrowed to 5 years of Dr. Samuelson's termination date on August 4, 2021.
>
> Because Monument Health's search of its records yield[s] over 500 results within the relevant time period, Monument is producing the names, accommodation, and dates for the individuals named. See Monument 880-891.
>
> Producing data regarding whether Monument required a form to be completed, whether Monument required medical evidence of the asserted disability and its cause, whether Monument rejected mental health professionals' information, and whether Monument prohibited the employee from bringing their attorney to any interactive process or meeting for all 500 plus individuals identified is overly broadly (sic), unduly burdensome, and not proportional to the needs of the case in violation of Fed. R. Civ. P. 26(c). Monument is willing to discuss with counsel whether it may be

able to produce the additional requested information for a
reasonable number of the individuals identified.

Id. at 2-3 (bold omitted).

Dr. Samuelson first takes issue with Monument's objections that
interrogatories nos. 2, 3, and 4 are unduly burdensome and overly broad.
Dr. Samuelson says that these are boilerplate objections, which are not
sufficiently specific to be valid objections.  Docket No. 33, at 6.  See Clark v.
Unum Grp., No. 4:20-CV-04013-KES, 2021 WL 4134520, at *5 (D.S.D. Sept.
10, 2021).

Monument responds that Dr. Samuelson conflates "boilerplate
objections" and "general objections."  Docket No. 36, at 5.  According to
Monument, general objections are permissible.  The court rejects that
argument.  As we held in Clark, "Rule 34 requires a party objecting to discovery
to show specifically how each production request is not subject to discovery."
2021 WL 4134520, at *5.  Indeed, in Clark, the litigants asserted many
objections identical to Monument's.  Id.  Accordingly, the court finds that
Monument's objections to interrogatory nos. 2, 3, and 4—that the discovery
requests are overbroad, unduly burdensome, and not proportional to the needs
of the case—are overruled.  That still leaves the matter of Monument's
supplemental answer, however, because the supplemental answer specifically
addressed how the information sought was overbroad, unduly burdensome,
and not proportional to the needs of the case.

Dr. Samuelson next objects to Monument providing a list of 500 names together with "the most vague descriptions of the 'accommodation' and a date, presumably when the reasonable accommodation request was made." Docket No. 33, at 9. The listed accommodations are two- or three-word statements, such as "Leave of Absence," "Modified Duty," or "Modified Schedule." Id. But the list does not answer several questions posted in interrogatory no. 2, such as whether Monument required a form to be completed, whether Monument required medical evidence of the asserted disability, whether Monument rejected mental health professionals' information, or whether Monument prohibited the employee from bringing their attorney to any interactive process or meeting. Id.

Monument responds that providing a complete answer to all the requests in interrogatory no. 2 is overly broad, unduly burdensome, and not proportional to the needs of the case. Docket No. 36, at 7. Monument proposes that its response to interrogatory no. 2 be limited to: "(1) physicians or other advanced care providers; (2) who worked at Monument Health Rapid City, not a satellite location; (3) submitted an ADA reasonable accommodation request; and (4) made that accommodation request in the five years prior to Dr. Samuelson's termination." Docket No. 36, at 10. Dr. Samuelson concedes that prongs (3) and (4) are appropriate, so only the first two prongs are in dispute. Docket No. 42, at 3-4.

Dr. Samuelson argues that prong 1—limiting interrogatory no. 2 to physicians or other advanced care providers—is inappropriate. He claims that

13

he intends to analyze Monument's policies when an employee seeks an ADA accommodation, and the procedure of requesting an accommodation does not differ based on the position one holds.  Id. at 4.[1]

"Generally speaking . . . the discovery of information concerning other employees [in an employment discrimination case][2] should be limited to employees who are similarly situated to the plaintiff."  Brinkman v. Sprinkler Fitters Loc. #417, No. 19-CV-2981 (KMM/TNL), 2022 WL 420881, at *12 (D. Minn. Feb. 11, 2022) (quotation omitted, cleaned up).  See, e.g., Cooper v. City of Dallas, No. 3:04-CV-2407-H, 2006 WL 1983234, at *2 (N.D. Tex. July 17, 2006) ("[P]laintiff is entitled to discovery of comparator data only for 'similarly situated' employees.").

This rule makes sense.  After all, accommodations that would be reasonable for other hospital employees (nurse, janitor, human resources representative) would not necessarily be reasonable for a doctor.  Allowing

---

[1] Dr. Samuelson also makes several other arguments, but they can be quickly dispatched.  First, Dr. Samuelson says that Monument's limitations should be rejected because the parties agreed during the meet-and-confer to shorten the timeline of interrogatory no. 2 from 10 years to 5 years.  Docket No. 42, at 4-5.  But agreeing on one limitation does not prevent Monument from seeking other limitations.  Dr. Samuelson also argues that it does not know how many physicians or other advance care providers have sought ADA accommodations in the past, so Monument exclusively possesses all the information that would allow Dr. Samuelson to make an informed decision.  Id. at 5.  But nothing in the Federal Rules of Civil Procedure requires Monument to disclose the number of comparators before seeking to limit an allegedly overbroad and overly burdensome interrogatory.

[2] Brinkman discussed a claim made under Title VII rather than the ADA.  Nevertheless, the court finds its reasoning to be persuasive and applicable to Dr. Samuelson's case.

14

discovery into every employee that has requested an accommodation would be overly broad and disproportionate to the needs of determining Dr. Samuelson's ADA claims. See Lindsey v. Albuquerque Pub. Sch. Bd. of Educ., No. CV 24-393 GBW/JFR, 2025 WL 357741 (D.N.M. Jan. 31, 2025) (denying a similar request). Therefore, the court agrees with Monument's proposal to limit interrogatory No. 2 to other physicians and advanced care providers.

Dr. Samuelson also takes issue with prong 2—limiting interrogatory no. 2 to employees who worked at Monument Health Rapid City, not a satellite location. Dr. Samuelson contends that this "narrowing is also concerning" because Monument has "cherry-picked" interrogatory no. 2's modifications based on information it has sole possession of, *i.e.* the number of employees interrogatory no. 2 would uncover if Monument's proposed limitations applied. Docket No. 42, at 5-6.

The Eighth Circuit rejected a request similar to Dr. Samuelson's in Semple v. Federal Express Corp., 566 F.3d 788 (8th Cir. 2009). There, an employee was fired for allegedly falsifying delivery records, and the employee sued for wrongful termination. Id. at 791. The employee requested company-wide discovery to examine how Federal Express interpreted a portion of its employment manual governing document falsification—in *all* its branches. Id. at 794. The district court denied that request, and the Eighth Circuit affirmed, reasoning that "[g]enerally, a plaintiff in a wrongful termination case is not entitled to company-wide discovery absent a showing of a particular need for the requested information." Id. In particular, the court observed that "[t]he

15

fact that this [employment manual] policy applied nationally has little bearing on its application by local management within the [employee's] District, and as a result, [the employee] is unable to establish a particular need for his broad discovery request." Id.

The Eighth Circuit made a similar ruling in Sallis v. University of Minnesota, 408 F.3d 470 (8th Cir. 2005). There, a Black employee sued his employer, the University of Minnesota, for employment discrimination. Id. at 472-74. The employee sought discovery from the entire University of Minnesota system, but a magistrate judge found that the requests were overly broad and unduly burdensome, limiting the request to the employee's department. Id. at 473-74. The Eighth Circuit affirmed, noting that the employee had spent the last 10 years working in a single department, and his allegations of discrimination focused on the behavior of his supervisors in that department. Id. at 478. Accordingly, the district court did not abuse its discretion in limiting discovery. Id. See also Carman v. McDonnell Douglas Corp., 114 F.3d 790, 792 (8th Cir. 1997) ("Companywide statistics are usually not helpful in establishing pretext in an employment discrimination case, because those who make employment decisions vary across divisions.").

The same is true for Dr. Samuelson. While Monument's ADA accommodations policy may be company-wide, that has little bearing on its application by local management in Rapid City. Accordingly, the court finds that Monument's suggested prong 2 limitation on interrogatory no. 2 be applied.

16

To recap, the court grants in part Dr. Samuelson's motion to compel with respect to interrogatory no. 2. Monument shall produce the documents requested in interrogatory no. 2, but those documents shall be limited to: (1) physicians or other advanced care providers; (2) who worked at Monument Health Rapid City, not a satellite location; (3) submitted an ADA reasonable accommodation request; and (4) made that accommodation request in the five years prior to Dr. Samuelson's termination.

### b. Interrogatory No. 3

Interrogatory no. 3 states

    3. List all meetings of any kind, including phone or virtual conferences, you have held which included an employee's attorney in the last 10 years from the date of this document. Indicate the employee involved, the employee's attorney, the date of such meetings, and the reason for the meeting.

Docket No. 34-3, at 2. Monument sent the below objection:

    OBJECTION: Defendants object to this Interrogatory because it is overly broadly (sic), unduly burdensome, not relevant, and not proportional to the needs of the case in violation of Fed. R. Civ. P. 26(c). In order to comply with this Interrogatory, Monument Health would be required to search the emails, calendars, and other correspondence of its entire legal team, human resources department, and management staff, in order to attempt to identify every instance in which there was a meeting with counsel for a Monument Health employee.

Docket No. 34-3, at 3 (bold omitted).

The court rejects Monument's objection. The information requested is relevant. Dr. Samuelson is arguing that it was discriminatory to not allow him to have an attorney present during certain meetings, so documents revealing whether *other* employees were afforded that privilege is plainly relevant.

Likewise, the requested discovery is not overly broad.  It requests an exceedingly narrow batch of documents—only those which address meetings involving an employee's attorney.

That leaves Monument's contention that the discovery is unduly burdensome and disproportional to the needs of the case.  It is true that responding to interrogatory no. 3 will require searching thousands of emails spanning a decade.  But all discovery is burdensome to defendants to some degree, and "the general rule requires the entity answering or producing the documents to bear that burden."  Clark v. Unum Grp., No. 4:20-CV-04013-KES, 2021 WL 4134520, at *7 (D.S.D. Sept. 10, 2021) (quotation omitted).

This court has allowed requests like interrogatory no. 3.  See, e.g., Haukaas v. Liberty Mut. Ins. Co., No. 4:20-CV-04061-KES, 2021 WL 5416251, at *8-9 (D.S.D. Nov. 19, 2021), adopted as modified, No. 4:20-CV-04061-KES, 2022 WL 1719412 (D.S.D. May 27, 2022) (finding it was not unduly burdensome to require a party to review 26,000 files spanning ten years, even when those files were not text-searchable); Oglala Sioux Tribe v. Van Hunnik, 298 F.R.D. 453, 457-58 (D.S.D. 2014) (finding it was not unduly burdensome to require party to manually sort through files of all juvenile cases for the past three years).

The court therefore grants Dr. Samuelson's motion to compel interrogatory No. 3.

### 4. Interrogatory No. 4

Interrogatory no. 4 states:

4. Describe in detail the dates, names, and communications
   involved regarding whether you would ask Dr. Cleve Trimble for
   a report as requested by Dr. Samuelson, indicating who made
   the final determination that you would not request a report
   from Dr. Cleve Trimble.

Docket No. 38-1, at 3. Monument sent the below objection and answer:

OBJECTION: Defendants object to this Interrogatory because it is
overly broad, unduly burdensome, not relevant, and not
proportional to the needs of the case in violation of Fed. R. Civ. P.
26(c).  In addition, to the extent such documents constitute
communications between Jason Green and Plaintiff's counsel, they
are equally accessible to Plaintiff.

ANSWER: Without waving those objections, Dr. Trimble was hired
to provide coaching to Dr. Samuelson to improve his relationship
with Monument and its staff in order to make him more successful
in the workplace.  Dr. Trimble was not retained or ever asked to
make an assessment of whether Dr. Samuelson suffered from a
disability and Dr. Trimble's contractual relationship with
Monument ended nearly six months before Dr. Samuelson made a
request for a reasonable accommodation on December 29, 2020.
Further, as a long retired general surgeon, it is unlikely that
Dr. Trimble is qualified to make any such diagnosis of any patient.
During the reasonable accommodation process, Dr. Samuelson
was advised that Dr. Trimble was no longer under contract with
Monument and Monument did not intend to enter into another
contract with him for purposes of accompanying Dr. Samuelson to
employee relations meetings during the interactive process or
compiling a report.

Dr. Samuelson was able to hire Dr. Trimble for that purpose and
did not do so.

Docket No. 34-3, at 3 (bold omitted).

Some context is useful.  Dr. Samuelson says that he asked Dr. Trimble to

supply a report and be his advocate at his reasonable accommodation

meetings, but Dr. Trimble could not due to his confidentiality agreement with

19

Monument.  Docket No. 33, at 14.  Because of that limitation, Dr. Trimble asked Dr. Samuelson to request that Monument direct Dr. Trimble to provide a report.  Id.  Monument has refused.  Id.

Dr. Samuelson takes issue with Monument's response to interrogatory no. 4.  Dr. Samuelson says that Monument fails to disclose who was primarily responsible for deciding to not request a report from Dr. Trimble, preventing Dr. Samuelson from deposing that individual.  Id. at 14-15.  Dr. Samuelson also says that Monument failed to list the communications among Monument staff regarding whether they would ask Dr. Trimble for a report.  Id. at 15. Finally, Dr. Samuelson says that Monument's statement that Dr. Samuelson could hire Dr. Trimble "is disingenuous at best, and intentionally deceptive at wors[t]."  Id. at 15.  It is plainly evident that Monument's response to interrogatory no. 4 is not fully responsive, as it does not include any of the dates, names, and communications requested.  Therefore, the question is whether Monument's objections to interrogatory no. 4 have merit.

Monument argues that this evidence would be irrelevant because Dr. Trimble was hired to provide coaching to Dr. Samuelson to improve his relationship with Monument staff and make him more successful in the workplace, not to diagnose Dr. Samuelson with a disability—something Dr. Trimble is not qualified to do as a retired surgeon.  Docket No. 36, at 15-16.  Moreover, Dr. Trimble's contractual relationship with Monument ended six months before Dr. Samuelson made his reasonable accommodation request. Id. at 16.

20

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy encompasses any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  <u>Burke v. Ability Ins. Co.</u>, 291 F.R.D. 343, 348 (D.S.D. 2013) (quotation omitted, cleaned up).  "Discoverable information itself need not be admissible at trial; rather, 'discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence.' "  <u>Kirschenman v. Auto-Owners Ins.</u>, 280 F.R.D. 474, 481 (D.S.D. 2012), <u>objections overruled</u>, No. CV 09-4190-KES, 2012 WL 13040020 (D.S.D. Apr. 18, 2012) (quoting Fed. R. Civ. P. 26(b)(1)).

The court finds that interrogatory no. 4 is relevant.  The identity of the individual responsible for not requesting a report from Dr. Trimble could lead to other matters that bear on the case; for instance, through deposing that individual Dr. Samuelson could discover unlawful motives for failing to seek a report.  Accordingly, the information sought in interrogatory no. 4 is relevant.

Monument also objects to interrogatory no. 4 to the extent it requests documents shared between Monument's counsel and Dr. Samuelson's counsel, as those documents are already accessible to Dr. Samuelson.  Docket No. 34-3, at 3.  This argument has been rejected by other courts.  <u>See</u> <u>St. Paul Reinsurance Co. v. Com. Fin. Corp.</u>, 198 F.R.D. 508, 514 (N.D. Iowa 2000) (finding "meritless" responding party's objection that request sought information and documents equally available to the propounding parties).  <u>See also</u> 8 Wright and Miller, Fed. Prac. & Proc. Civ. § 2014 at 111 (1970) ("[I]t is

21

not usually ground for objection that the information is equally available to the interrogator or is a matter of public record."). This court agrees and rejects Monument's objection.

As for Monument's other objections—that interrogatory no. 4 is overly broad, unduly burdensome, and not proportional to the needs of the case—the court finds that Monument has not substantiated those arguments, so they are boilerplate objections and must be rejected. See supra at 12.

Because the court finds Monument's objections to interrogatory no. 4 to be without merit, the court grants Dr. Samuelson's motion to compel interrogatory no. 4.

## 5. Document Requests

Dr. Samuelson next moves to compel documents responsive to RFP nos. 6 and 7.

### a. RFP No. 2

RFP no. 2 states:

2. Provide Dr. Samuelson's Physician Employment Agreement, any and all other contracts between the parties, his personnel file, and any documents or communications researching or considering his personality or personality disorder, disability, or idiosyncrasies.

Docket No. 39-4, at 4. Monument responded:

RESPONSE: See Monument 000023-000049 (Physician Employment Agreement), Monument 000001-000022 (Personnel file). With respect to the request for "any documents or communications researching or considering his personality or personality disorder, disability, or idiosyncrasies," none.

22

Id.

During the meet-and-confer conference, Dr. Samuelson requested that Monument supplement its response to identify who it consulted in providing that response. Docket No. 33, at 17. Essentially, Dr. Samuelson finds it suspicious that there are no documents or communications concerning his disorder. Id. But "[a] party may not move to compel discovery on the basis of a mere suspicion that the producing party has additional information that it failed to disclose." Couture v. Anderson, No. CIV. 10-5026, 2012 WL 369451, at *6 (D.S.D. Feb. 3, 2012). Dr. Samuelson has offered nothing more than a hunch that Monument has secret, undisclosed documents concerning his disability. Accordingly, the court rejects Dr. Samuelson's request that this court compel a supplemental response to RFP no. 2.

**3. RFP No. 6**

RFP no. 6 states:

6. Produce all communications and documents regarding any and all employees who have made an ADA reasonable-accommodation request in the last 10 years from the date of this document, including information regarding the date of the request, whether you required a form to be completed, whether you required medical evidence of the asserted disability or its cause, whether you rejected mental health professionals' information, and whether you prohibited the employee from bringing their attorney to any interactive process or meeting. Please redact all such documents so as not to disclose the employees' medical information.

Docket No. 39-4, at 5.  The parties later agreed to reduce the scope of RFP

no. 6 to five years.  Docket No. 33, at 19.  Monument sent the below objection

and supplemental response:

> OBJECTION: Defendants object to this Request for Production
> because it is overly broad, unduly burdensome, does not seek
> relevant information, and is not proportional to the needs of the
> case as required by Fed. R. Civ. P. 26(b).
>
> SUPPLEMENTAL RESPONSE: Pursuant to the agreement of
> counsel narrowing the scope of this Request for Production to five
> years prior to Dr. Samuelson's termination on August 4, 2021, see
> Monument 000880-000889.
>
> As set forth above in its response to Interrogatory No. 2, because
> Monument Health's search of its records yield over 500 results
> within the relevant time period, Monument is producing the
> names, accommodation, and dates for the individuals named.  See
> Monument 000880-000891.
>
> Producing data regarding whether Monument required a form to be
> completed, whether Monument required medical evidence of the
> asserted disability and its cause, whether Monument rejected
> mental health professionals' information, and whether Monument
> prohibited the employee from bringing their attorney to any
> interactive process or meeting for all 500 plus individuals identified
> is overly broadly (sic), unduly burdensome, and not proportional to
> the needs of the case in violation of Fed. R. Civ. P. 26(c).
> Monument is willing to discuss with counsel whether it may be
> able to produce the additional requested information for a
> reasonable number of the individuals identified.

Id. at 5-6 (bold omitted).

Dr. Samuelson says that RFP no. 6 is the counterpart to interrogatory

no. 2.  Accordingly, "for the sake of judicial economy," Monument relies on its

arguments made about interrogatory no. 2, and makes no additional

arguments.  Docket No. 36, at 21.  The court has already addressed

interrogatory no. 2.  See supra at 11-17.  Accordingly, for the reasons

enumerated in addressing interrogatory no. 2, the court orders Monument to

produce documents responsive to RFP no. 6, but those documents shall be limited to: (1) physicians or other advanced care providers; (2) who worked at Monument Health Rapid City, not a satellite location; (3) submitted an ADA reasonable accommodation request; and (4) made that accommodation request in the five years prior to Dr. Samuelson's termination.

### 7. Requests for Admission ("RFA")

Federal Rule of Civil Procedure 36(a)(1) provides that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Rule 36(a)(6) states that "[t]he requesting party may move to determine the sufficiency of an answer or objection," and that the court must order an answer be served where an objection is unjustified.

The theme of Dr. Samuelson's arguments regarding the RFA's is that Monument failed to comply with Rule 36(a)(4) which says that "when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part being admitted and qualify or deny the rest." Dr. Samuelson says that Monument "attempts to deny requests for admission but then explains why its responses are actually being admitted," meaning that Monument "failed to properly answer these requests for admission in compliance with Rule 36."

Monument responds that Rule 36(a)(4) also requires that if a matter requested is not admitted, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Additionally, "when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  Fed. R. Civ. P. 36(a)(4).

### a.  RFA No. 2

RFA no. 2 states

> 2.  Admit Dr. Cleve Trimble ceased being a consultant to Monument Health due to the manner in which Monument Health was treating Dr. Samuelson.

Docket No. 34-3, at 8. Monument responded:

> RESPONSE: Deny.  Monument Health is aware that Dr. Cleve Trimble terminated his contract with Monument Health out of frustration with his interactions with Samuelson (which had become much more frequent that would occur in a coaching arrangement) along with his frustrations that Monument Health insisted that Dr. Samuelson would need to continue to work within the established neurosurgery practice.  Dr. Trimble was well aware that Monument Health had no intention to separate the neurosurgery practice into multiple locations.  At no time did Dr. Trimble make any suggestion that the basis for his thoughts regarding Dr. Samuelson's wishes were rooted in a disability nor did Dr. Trimble assert he had diagnosed Dr. Samuelson with any condition that constitutes a disability.

Id. (bold omitted).

Dr. Samuelson says this response is non-responsive to the question, which Monument is required to admit, deny, or admit in part and deny in part. But Monument *did* deny the RFA—it just also explained why it believes

26

Dr. Trimble terminated his contract.  Nothing more is required under Rule 36.

Accordingly, the court denies Dr. Samuelson's motion to compel RFA no. 2.

### 3.  RFA No. 4

RFA no. 4 states

> 4.  Admit that Monument did not make any arrangements for Dr. Amilyn Taplin after Dr. Samuelson submitted his ADA accommodation request to accommodate Dr. Taplin as an additional surgeon, such as arrangements for a desk, nurse, treatment rooms to see patients, or modifying the schedule of the entire department.

Docket No. 34-3, at 9.  Monument responded

> RESPONSE: Defendants object to this Request for Admission as ambiguous, unclear, and unintelligible.
>
> SUPPLEMENTAL RESPONSE: Deny.  Dr. Amilyn Taplin was already working for Monument Health as a locum tenens physician at the time that she was hired by Monument Health as an employee.  Accordingly, the referenced arrangements were largely unnecessary as many of them were already in place.

Id. (bold omitted).

Dr. Samuelson says that this is actually an admission of the RFA; therefore, writing "deny" conflicts with Rule 36's mandate that denials "must fairly respond to the substance of the matter."  But Monument's denial was proper.  Monument responded that several of the mentioned accommodations were already in place and therefore denied that it did not make any arrangements for Dr. Taplin.  Nothing more is required under the Federal Rules.  Accordingly, Dr. Samuelson's motion to compel is denied with respect to RFA no. 4.

### 5. RFA Nos. 12, 13, and 14

RFA no. 12 states:

> 12. Admit you have not prohibited meeting with employees'
> attorneys except for those making ADA reasonable-
> accommodation requests.

Docket No. 34-3, at 10. Monument responded:

> RESPONSE: Deny.  To the extent any employee has had an
> attorney contact Defendants, they believe that contact has
> occurred before any individual became an employee as a part of
> the contract negotiation process.  Numerous meetings between
> Monument Health attorneys and former employees' attorneys have
> occurred.  In the context of medical negligence claims, Monument
> Health has met with employees' attorneys, which are provided by
> Monument Health, in order to jointly defend such claims.

> SUPPLEMENTAL RESPONSE: Deny.  To the extent any employee
> has had an attorney contact Defendants, they believe that contact
> has occurred before any individual became an employee as a part
> of the contract negotiation process.  Numerous meetings between
> Monument Health attorneys and former employees' attorneys have
> occurred.  In the context of medical negligence claims, Monument
> Health has met with employees' attorneys, which are provided by
> Monument Health, in order to jointly defend such claims.

> In the context of ordinary human resources matters, such as
> meeting during the ADA interactive process, employee discipline,
> or other internal investigations, employees are not permitted to
> bring attorneys to meetings with Monument Health.

Id.

Dr. Samuelson says that RFA no. 12 must be admitted in part because

Monument admits that employees' attorneys can be present in meetings unless

the meeting is for ADA reasonable accommodations.  But that misreads RFA

No. 12, which states "[a]dmit you have not prohibited meeting with employees'

attorneys *except for those making ADA reasonable-accommodation requests*."

Monument responds "deny" because it prohibits employees from bringing

attorneys to various routine meetings.  Perhaps a differently worded RFA would require a partial admission; however, the RFA as written is properly denied by Monument.

Dr. Samuelson next argues that Monument's response to RFA no. 13 is inadequate.  RFA no. 13 provides:

> 13. Admit you have allowed employees' attorneys to be present in contract negotiations with the employee.

Id. at 11.  Monument responded:

> Response: Deny.  Prospective employees negotiating employment contracts frequently have their attorneys contact Monument Health attorneys.
>
> SUPPLEMENTAL RESPONSE: Deny.  Monument states that current employees' attorneys have not been permitted to be present in contract negotiations.  Prospective employees negotiating employment contracts frequently have their attorneys contact Monument Health attorneys.

Id.

Dr. Samuelson says that RFA no. 13 should also be admitted in part based on Monument's narrative response.  This argument likewise fails.  The RFA requests that Monument admit that employees' attorneys have been allowed to be present in contract negotiations.  Monument denies, stating that only prospective employees' (*i.e.*, non-employees) attorneys have been allowed in meetings.  That response is internally consistent with Monument's denial.

Finally, Dr. Samuelson makes the same argument regarding RFA no. 14, which states:

14. Admit you have allowed employees' attorneys to be present in
meetings other than those disability-related.

Monument responded:

> RESPONSE: Deny.  See responses to Requests for Admission No.
> 11 and 12.
>
> SUPPLEMENTAL RESPONSE: Deny.  See responses to Requests for
> Admission No. 11 and 12.

Id.  This response is proper for the same reasons as explained above.

Accordingly, the court denies Dr. Samuelson's motion to compel with

respect to RFA nos. 12, 13, and 14.

**6. RFA No. 18**

RFA no. 18 states:

18. Admit the "anonymous" complaint referenced in RFA #16 was
made after Dr. Samuelson requested that he not have to be
physically present in morbidity and mortality meetings.

Id. at 12.  Monument responded:

> RESPONSE: Admit in part and deny in part.  Monument is not
> aware of any anonymous complaint regarding Dr. Samuelson
> during the time frame set forth in RFA #16 and further denies that
> there is any causal relationship between the two.  Moreover,
> attending morbidity and mortality meetings is Dr. Samuelson's
> obligation as a member of the medical staff and Monument Health,
> as his employer, has no ability to excuse him from those
> obligations.
>
> SUPPLEMENTAL RESPONSE: Deny.  The neurosurgery charter
> provided that each physician would have cases reviewed quarterly
> in a morbidity and mortality conference.  While the July 7, 2021[,]
> morbidity and mortality conference occurred after the referenced
> complaint, Monument denies there was a causal relationship
> between Dr. Samuelson's request to be excused from morbidity
> and mortality meetings and the scheduling of the July 7, 2021[,]
> morbidity and mortality meetings.  It was simply Dr. Samuelson's
> turn in the rotation.  Moreover, attending morbidity and mortality
> meetings is an essential obligation for every member of the medical

30

staff and Monument Health, as his employer, has no ability to
excuse him from those obligations.

Id. (bold omitted).  Dr. Samuelson says that this response should be

deemed admitted because Monument's supplemental response admits

that the morbidity and mortality meeting occurred after the anonymous

complaint.

Dr. Samuelson is correct.  While Monument's supplemental

response denies any causal relationship between Dr. Samuelson's

request and the referenced complaint, it admits that "the July 7, 2021[,]

morbidity and mortality conference occurred after the referenced

complaint."  RFA no. 18 asks that Monument admit that "the

'anonymous' complaint referenced in RFA #16 was made after

Dr. Samuelson requested that he not have to be physically present in

morbidity and mortality meetings."  Accordingly, the court deems RFA

No. 18 admitted.

### 7.  RFA No. 22

RFA no. 22 states:

22. Admit the ADA does not prohibit an employer from assuming
    an employee is disabled.

Id. at 13.

Monument responded:

OBJECTION: Defendant objects to this Request for Admission
because it seeks a legal conclusion.

RESPONSE: Without waving that objection, deny.  Under the ADA,
there is a cause of action against an employer for "regarded as"

claims, which occur when an individual is regarded as having physical or mental impairments. Monument Health never regarded Dr. Samuelson as being disabled, but Dr. Samuelson made repeated statements to people that he was regarded as disabled.

SUPPLEMENTAL RESPONSE: Without waving the objection, Monument admits that under the ADA, there is a cause of action against an employer for "regarded as" claims. Which occur when an individual is regarded as having physical or mental impairments. Monument Health never regarded Dr. Samuelson as being disabled, but Dr. Samuelson made repeated statements to people that he was regarded as disabled.

Id. at 13-14 (bold omitted).

Dr. Samuelson argues that Monument's "responsive answer clearly shows Defendants wish to admit this request, but the following explanation does nothing more than try to opine on an issue that was not asked in the request for admission." Docket no. 33, at 30-31. Accordingly, Dr. Samuelson requests that RFA no. 22 be deemed admitted.

The court rejects Dr. Samuelson's argument. RFA no. 22 asks that Monument admit that "the ADA does not prohibit an employer from assuming an employee is disabled." Monument denies that request because there can be legal liability where an employer assumes an employee is disabled. Nothing about that answer impliedly admits the RFA. Accordingly, the court denies Dr. Samuelson's request to deem RFA no. 22 admitted.

**8. RFA No. 23**

RFA no. 23 states:

> 23. Admit that Monument Health knew Dr. Samuelson's phone calendar which Monument Heath set up was HIPAA-compliant and had verified that at the July 12, 2021[,] meeting with Dr. Samuelson when he gave Monument Health representatives his phone and they viewed it.

Docket No. 34-3, at 14. Monument responded:

> RESPONSE: Admit that Dr. Samuelson's phone calendar was complaint with the HIPAA Security Rule, but Dr. Samuelson voided those security measures by sharing the contents of his Monument Health provided technology with his girlfriend who was not authorized to view that information.
>
> SUPPLEMENTAL RESPONSE: Admit that Dr. Samuelson's phone calendar was compliant with the HIPAA Security Rule from a technical perspective, but state that Dr. Samuelson's conduct in sharing access to his calendar with his significant other who was not eligible to see it voided those security measures.

Id. (bold omitted).

Dr. Samuelson again argues that Monument admits the request but is trying to "explain away" its response. Docket no. 33, at 30. Accordingly, Dr. Samuelson requests that RFA no. 23 be deemed admitted.

But Rule 36(a)(4) states that "when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Monument was free to explain that, while Dr. Samuelson's phone calendar was technically HIPAA compliant, his conduct voided those security measures. Therefore, the court denies Dr. Samuelson's request to deem RFA no. 23 admitted.

## C.    Attorney's Fees

Finally, Dr. Samuelson argues that he is entitled to attorney's fees incurred in making this motion.  When a party fails to fully respond to discovery requests and such nonresponse is not "substantially justified," the court "must, after giving an opportunity to be heard, require the party . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  A position is "substantially justified" if "there is a 'genuine dispute' . . . or 'if reasonable people could differ as to the appropriateness of the contested action.' " Oyen v. Land O'Lakes Inc., No. CIV. 07-4112, 2009 WL 536606, at *2 (D.S.D. Mar. 3, 2009) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)) (cleaned up).

The court finds that Monument's responses were substantially justified, so an award of attorney's fees is not appropriate.  This court has previously observed that "where there was an absence of judicial opinions on the issue presented in the motion to compel, a party's position has been found to be substantially justified." Id. at *3 (citing Henkel v. XIM Products, Inc., 133 F.R.D. 556, 558 (D. Minn. 1991)).  None of Monument's positions were foreclosed by binding precedent.  Moreover, after reviewing the disputed discovery, the court finds that reasonable minds could differ as to whether Monument's positions were correct.  Therefore, the court denies Dr. Samuelson's motion for attorney's fees.

**CONCLUSION**

Based on the foregoing facts, law and analysis, this magistrate judge grants in part and denies in part Dr. Samuelson's motion to compel:

- Grant Dr. Samuelson's motion to compel with respect to interrogatory no. 2 but limit those documents to (1) physicians or other advanced care providers; (2) who worked at Monument Health Rapid City, not a satellite location; (3) submitted an ADA reasonable accommodation request; and (4) made that accommodation request in the five years prior to Dr. Samuelson's termination.

- Grant Dr. Samuelson's motion to compel with respect to interrogatory nos. 3 and 4.

- Deny Dr. Samuelson's motion to compel with respect to RFP no. 2.

- Grant Dr. Samuelson's motion to compel with respect to RFP no. 6, with the same limitations as ordered for interrogatory no. 2.

- Deny Dr. Samuelson's motion to compel with respect to RFA nos. 2, 4, 12, 13, 14, 22, and 23.

- Grant Dr. Samuelson's motion to compel with respect to RFA no. 18; that request shall be deemed admitted.

- Deny Dr. Samuelson's request for attorney's fees.

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service

35

of this order to file written objections unless an extension of time for good cause is obtained. Fed. R. Civ. P. 6(b)(1), 72(a). Failure to file timely objections will result in the waiver of the right to appeal this ruling. <u>United States v. Becerra</u>, 73 F.4th 966, 972-73 (8th Cir. 2023). Objections must be specific in order to require review by the district court. <u>Thompson v. Nix</u>, 897 F.2d 356, 357-58 (8th Cir. 1990). If a party files objections pursuant to this notice, the opposing party has 14 days to respond to those objections.

DATED this 27th day of October, 2025.

                         BY THE COURT:

                         VERONICA L. DUFFY
                         United States Magistrate Judge