**UNITED STATES DISTRICT COURT**

**DISTRICT OF SOUTH DAKOTA**

**WESTERN DIVISION**

| | |
|---|---|
| **RODNEY M. SAMUELSON, M.D.,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**MONUMENT HEALTH, INC., f/k/a REGIONAL HEALTH, INC., f/k/a MONUMENT HEALTH PHYSICIANS, INC., f/k/a REGIONAL HEALTH PHYSICIANS, INC.; and MONUMENT HEALTH RAPID CITY HOSPITAL, INC., f/k/a RAPID CITY REGIONAL HOSPITAL, INC.,**<br><br>**Defendants.** | **5:23-CV-05091-CCT**<br><br>**ORDER FOR SANCTIONS** |

Defendants, Monument Health, Inc. and Monument Health Rapid City Hospital, Inc. (collectively "Monument"), move for sanctions against Plaintiff, Rodney M. Samuelson, M.D. ("Samuelson"), or his counsel, for the last-minute disclosure of over 325 documents.[1] Together, Samuelson and counsel resist, insisting that the late disclosure does not warrant sanctions.[2] The

[1] *See* Dkt. Nos. 53; 54; 63.
[2] *See* Dkt. No. 58.

Court disagrees and finds that the document dump, roughly 16 hours before Samuelson's deposition, requires compensatory sanctions.

## BACKGROUND

Samuelson, a neurosurgeon, sued Monument, his former employer, for violations of the Americans with Disabilities Act ("ADA").[3] Monument maintains that it fired Samuelson for violating Monument policies and federal law (HIPAA) by texting and emailing confidential patient health information (PHI) on his personal, unsecured phone.[4] Samuelson disputes Monument's proffered reasons for termination, alleging that they were pretextual and that Monument retaliated against him for asserting his ADA rights.[5] In doing so, he claims that Monument employees commonly exchanged PHI—via texts and emails—on their personal devices.[6]

The parties have two cases against each other—one in federal court (this case); the other in state court.[7] Both cases have been pending for years. On August 30, 2024, Monument served interrogatories and requests for production ("RFP") on Samuelson in the federal case.[8] RFP 8 requested Samuelson to produce all documentation in his possession showing that it was a common practice for Monument staff to text PHI to other staff.[9] Samuelson responded that Monument's counsel "received an electronic hold email … advising that each Monument [ ] medical provider/staff had a duty to preserve all emails and text messages and Monument should have this

---

[3] *See generally* Dkt. No. 1.
[4] Dkt. No. 59-1.
[5] Dkt. No. 1 at 27–29.
[6] Dkt. No. 58 at 1–7, 18.
[7] *Monument Health v. Samuelson*, Pennington Cnty. No. 51CIV22-1485 (S.D. Cir. Ct. December 27, 2022).
[8] Dkt. Nos. 55 at 2; 55-4.
[9] Dkt. No. 55-4 at 6 ¶ 8.

information in [its] possession" and said that his response would be "supplemented with the documentation [he] has in his possession."[10]

Samuelson's deposition, and that of his significant other, Jenni Murray, were set for 9:30 a.m. MT on February 12 and 13, 2026, respectively, in Rapid City, South Dakota. Counsel for Monument offices in Sioux Falls and agreed to depose Samuelson and Murray in Rapid City.[11] The distance from Sioux Falls to Rapid City is about 350 miles.[12]

Monument's counsel planned to travel to Rapid City on February 11 and stay two nights there.[13] At 5:16 p.m. MT that day, Samuelson's counsel sent counsel for Monument 328 pages of screenshots from Samuelson's cell phone.[14] These screenshots were of text messages to-and-from Samuelson and other Monument employees which contained PHI—including discussions about the condition and treatment of named patients and photographs of patients' body parts and medical records.[15]

Monument's counsel responded at 7:00 p.m. on February 11, informing her counterpart that because of the eleventh-hour disclosure, Samuelson and Murray's depositions would be canceled.[16] Counsel observed that she could not properly prepare for the depositions due to the late disclosure, the volume of documents, and the unidentified participants in the text conversations.[17]

---

[10] Dkt. No. 55-5 at 11.
[11] Dkt. Nos. 64-3; 55-7.
[12] "Driving Route from Sioux Falls to Rapid City." *Google Maps*, google.com/maps (last visited June 29, 2026).
[13] Dkt. No. 67 (audio file at 4:26:45–56).
[14] Dkt. Nos. 55-7 at 5; 55-8.
[15] Dkt. No. 55-8 at 8, 29, 114–115, 169–170.
[16] Dkt. No. 55-7 at 4.
[17] *Id.*

Counsel for Samuelson made efforts to temper the situation. She offered to meet with Monument's counsel at 8:00 a.m. the next morning to identify the people on the text messages, reserve a conference room for opposing counsel to review the texts, or talk on the phone. She also agreed to Murray being deposed on February 12 and Samuelson on February 13 so counsel could have another evening to study the texts.[18] None of these offers were curative, in counsel for Monument's view. Counsel pointedly remarked that "it is not realistic for me to prepare given your late, incomplete disclosure. There are 328 pages of text messages, not 20 or 30[,]" and commented that she did not appreciate "this eleventh-hour gamesmanship."[19] Counsel added that she would not be fulfilling her duty to her client by accepting rival counsel's explanation of what was in the 328 pages and that, for strategic reasons, she wanted to depose Samuelson first and then Murray.[20]

Monument subsequently moved for sanctions, requesting expenses and attorney's fees for the canceled depositions.[21] Samuelson opposed the motion, arguing that sanctions were not called for and that his accommodation offers were sufficient to obviate any prejudice.[22] The Court held a hearing on the motion at which Samuelson's counsel admitted that she had the 328 pages of text messages in her possession for "six or more months" before turning them over to Monument's counsel the evening before Samuelson's deposition.[23] The Court took the matter under advisement.[24]

[18] Dkt. No. 55-7 at 1–3.
[19] Dkt. No. 55-7.
[20] Dkt. No. 67 (audio file at 4:26:45–56).
[21] Dkt. Nos. 53, 54, 63.
[22] Dkt. No. 58.
[23] Dkt. No. 67 (audio file at 4:20:30–45).
[24] *Id.* (audio file at 4:58:30–54).

## DISCUSSION

### A. Rule 26(a) & (e)

Federal Rule of Civil Procedure 26(a) directs that a party make initial disclosure of "all documents [and] electronically stored information … in its possession, custody, or control" that it "may use to support its claims or defenses[.]"[25] Subpart (e) of the rule addresses requested discovery and supplementation. That subpart requires a party who has responded to a request for production to supplement its response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]"[26] But the requirement does not extend to "additional or corrective information [that] has [ ] been made known to the other part[y] during the discovery process or in writing[.]"[27] Rule 26(e) is "not an invitation to hold back material items and disclose them at the last moment."[28] "If there is an untimely delay between finding the new facts and disclosing them through supplementation, then supplementation has not been effectuated in a timely manner."[29]

Rule 26(a) and (e) are two channels that lead to the same reservoir—Rule 37(c) sanctions.[30] Samuelson violated Rule 26(e) by failing to timely supplement his response to RFP 8. Whether he violated Rule 26(a) by not initially disclosing the information or contents of his old phone is a thornier question. He says he did not have possession or control of the texts at the time of the initial

---

[25] Fed. R. Civ. P. 26 (a)(1)(A)(ii); *see also Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018).
[26] Fed. R. Civ. P. 26(e)(1)(A); *Hendrickson v. Rapid City*, No. 5:22-CV-5063, 2024 WL 39072, at *4 (D.S.D. Jan. 3, 2024).
[27] *Id.*
[28] *Hendrickson*, 2024 WL 39072, at *4 (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure*, § 2049.1 (3d ed. 2010)).
[29] *Id.* (citing *Hysitron Inc. v. MTS Sys. Corp.*, No. 07-1533, 2010 WL 55987, at *6 (D. Minn. Jan. 4, 2010)).
[30] Fed. R. Civ. P. 37(c)(1)(A) ("If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial … In addition to or instead of this sanction, the court … may order payment of the reasonable expenses, including attorney's fees, caused by the failure[.]").

disclosures and, as such, could not have provided them.[31] Making a Rule 26(a) compliance determination would require findings on whether Samuelson made a good-faith effort to "timely" recover the phone data and whether it is credible that he forgot, and could not come up with, the password to his old phone. The Rule 26(e) violation is straightforward—Samuelson failed to judiciously supplement his response to RFP 8 and produce the requested documents (screenshots) he had in his possession for six months or more. The eleventh-hour disclosure of them harmed Monument and necessitated the postponement of the depositions. It is the untimely supplementation to the RFP response that begets Rule 37(c) sanctions.[32] So there is no need to delve into the thicket of whether Rule 26(a) was adhered to because Rule 26(e) was not.

Rule 26(e) mandates a party who has responded to a production request to supplement its response in a "timely manner" upon learning that the response is incomplete in some material respect when the additional information has not been made known to the other party during the discovery.[33] The "timely manner" inquiry of the rule considers when the new information was discovered and then supplemented, or disclosed, to the other party.[34] Monument's RFP 8 asks that Samuelson:

> Produce copies of all documentation in your possession relating to your contention that it was a common practice [for] Monument [ ] staff to photograph patients and computer screens and to email and text other providers and consultants patient health information as asserted in Paragraph 92 of your Complaint.[35]

This RFP was served 17 plus months before Samuelson produced the text messages.[36] His initial response to the RFP was that:

---

[31] Dkt. No. 58 at 15.
[32] Fed. R. Civ. P. 26(e)(1)(A); 37(c)(1).
[33] Fed. R. Civ. P. 26(e)(1)(A).
[34] *Hendrickson*, 2024 WL 39072, at *4 (quoting *Hysitron*, 2010 WL 55987, at *6).
[35] Dkt. No. 55-5 at 11.
[36] *See* Dkt. No. 55-4 (served on August 30, 2024).

> Monument['s] attorney received an electronic hold email on August 5, 2021 and an electronic hold letter on August 19, 2021 advising that each Monument [ ] medical provider/staff had a duty to preserve all emails and text messages and Monument should have this information in [its] possession and should have produced the same [ ] in discovery. This response will be supplemented with the documentation [ ] Samuelson has in his possession.[37]

The response was served on October 4, 2024. Samuelson and his counsel were in possession of the 328 screenshot pages for at least 6 months before disclosing them.[38] Their disclosure was untimely and cryptic and made when defense counsel was in a bad position, driving, far from her office, and 16 hours before the commencement of Samuelson's deposition.[39] This was not a timely supplementation.

The text messages were what RFP 8 asked for—evidence that Monument staff commonly texted and emailed PHI to each other. The texts showed just that and were probative of an important issue in the case: whether Samuelson was fired for valid reasons or as a pretext for something else. Given the significance of this issue, Monument's counsel was within her right to insist that she have time to independently examine each text message herself and with her client and call off the depositions. Counsel for Samuelson's efforts to accommodate were admirable, but not an elixir for the lagging disclosure.

Samuelson claims he had no duty to produce the text messages because of the "made known" section of Rule 26(e) and his two preservation letters.[40] Subpart (e)(1)(A) of the rule exempts supplementation if additional or corrective information has "been made known to the other part[y] during the discovery process or in writing[.][41] In his second

[37] Dkt. No. 55-5 at 11.
[38] Dkt. No. 67 (audio file at 4:20:30–45).
[39] Dkt. No. 55 at 3 ¶ 11; 55-8.
[40] Dkt. No. 58 at 2–3, 16–17.
[41] Fed. R. Civ. P. 26(e)(1)(A).

letter, Samuelson informed Monument that it needed to advise Monument providers that they must preserve all personal or work cell phone photographs of patients and screens containing PHI.[42] The letters, according to Samuelson, shifted the burden onto Monument to find the text messages and produce them to him.[43] The Court does not concur.

"The party seeking production bears the burden of proving that the opposing party has [ ] control" of the discovery.[44] "In determining whether an employer has "control" of its employees' communications on their personal devices, [a c]ourt must consider several factors, including (1) whether the employer issued the devices, (2) whether the devices were used for business purposes, and (3) whether the employer had a legal right to obtain communications from the devices."[45]

Samuelson has failed to carry his burden. There is no evidence that the texting at issue occurred on Monument-owned devices or that Monument had a policy allowing its employees to access PHI on their personal devices. Whether the devices were used for business purposes is a question courts are split on.[46] But even if they were, discussing work-related matters on personal devices does not give Monument the right to procure information from them.[47]

---

[42] Dkt. No. 59-3.
[43] Dkt. No. 58 at 16.
[44] *Sports Rehab Consulting LLC v. Vail Clinic, Inc.*, No. 1:19-cv-02075, 2025 WL 1144559, at *7 (D. Colo. Apr. 18, 2025) (quoting *XTO Energy, Inc. v. ATD, LLC*, No. Civ. 14-1201, 2016 WL 1730171, at *23 (D.N.M. Apr. 1, 2016)).
[45] *Krishnan v. Cambia Health Sols., Inc.*, No. 2:20-cv-574, 2021 WL 3129940, at *2 (W.D. Wash. July 23, 2021).
[46] *See Stinson v. City of New York*, No.10 Civ.4228, 2016 WL 54684, at *5 (S.D.N.Y. Jan. 5, 2016) (noting the division among federal courts and citing cases); *Cotton v. Costco Wholesale Corp.*, No. 12-2731, 2013 WL 3819974, at *6 (D. Kan. July 24, 2013) (denying discovery for employee text messages and emails where not issued by employer or used for business purposes).
[47] *Krishnan*, 2021 WL 3129940, at *2 ("Plaintiff has provided evidence of text messages between his supervisor, Faraz Shafiq, and several employees discussing work-related material on their personal devices." "However, the personal cell phones were not issued by Defendants, and Plaintiff has not established that the devices are routinely used for business purposes or to what extent." "The Court finds that Plaintiff has not met its burden to establish that Defendants are in 'control' of the requested communications and denies the motion."); *In re Pork Antitrust Litig.*, No. 18-cv-1775,

So Samuelson loses on two of the "control" factors and is shaky on the third. He has not established that Monument had an obligation to locate and produce communications it had no control over. He was therefore not relieved of his duty to timely disclose the text messages he had possession of in response to RFP 8.[48]

Samuelson also contends that because he made Monument aware of the text messages, he was absolved of his duty to supplement.[49] This contention is also unpersuasive. The standard is whether the additional information was "made known" to Monument during the discovery process or in writing.[50] Samuelson advised Monument that it was common practice for physicians to text PHI. But as already discussed, being informed of such a practice does not equate to possession of, access to, or control over the supporting evidence itself (the 328 text communications between Samuelson and other Monument employees on their devices).

Samuelson had a duty to supplement his response to RFP 8 in a timely manner under Rule 26(e). He did not. Retaining the communications for at least six months and then springing them on Monument the night before Samuelson was to be deposed violated Rule 26(e). This violation triggers sanctions analysis.

---

2022 WL 972401, at *6 (D. Minn. Mar. 31, 2022) ("It is one thing to show that [an employer] may ask for documents in the possession of someone with whom it has a relationship, but quite another to conclude that the [employer] has the practical ability to demand such documents, and therefore has "control" over them."); *Sports Rehab,* 2025 WL 1144559, at *1, 7 (the standard for establishing control is if the personal phone use is "exclusively (or even primarily) for business purposes").

[48] *Sports Rehab,* 2025 WL 1144559, at *1, 7 (holding that the defendant did not have control over its board members' personal cell phones because the phones were not "exclusively (or even primarily) for business purposes.").

[49] Dkt. No. 58 at 16.

[50] Fed. R. Civ. P. 26(e)(1)(A).

**B. Rule 37(c)**

Under Rule 37(c) when a party fails to provide information as required by Rule 26(e), a court may order payment of reasonable expenses—including attorney's fees—caused by the failure unless the failure was substantially justified or is harmless.[51]

The purpose of sanctions under the rule is "to deter abuse and compensate the opposing party for all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly."[52] The rule does not have a meet-and-confer requirement for sanctions caused by a Rule 26(e) violation.[53]

When a party fails to comply with Rule 26(e), a court has "wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case."[54] The reviewing court should consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information [ ] would disrupt the order and efficiency of the trial, and the importance of the information …."[55]

Samuelson violated Rule 26(e). This lands him in the Rule 37(c) pool and subjects him to sanctions unless his delayed disclosure of the text messages was justified or is benign.

Being locked out of his phone may have been a reason for Samuelson to delay his supplementation. But once he and his counsel were able to access and retrieve the text messages—

---

[51] Fed. R. Civ. P. 37 (c)(1)(A).
[52] *Hendrickson*, 2024 WL 39072, at *4 (quoting *Johnson Int'l Co. v. Jackson Nat. Life Ins. Co.*, 19 F.3d 431, 439 n.10 (8th Cir. 1994)).
[53] *Vanderberg*, 906 F.3d at 707 ("Petco did not violate the meet and confer requirement of Rule 37(a)(1) because that requirement does not apply to requests for exclusion of evidence under Rule 37(c)(1)."); *see also E & I Global Energy Servs., Inc. v. Liberty Mut. Ins. Co.*, No. 4:20-CV-04033, 2023 WL 372106, at*2 (D.S.D. Jan. 24, 2023) (stating that the meet-and-confer requirement only applies to motions to compel discovery under Rule 37(a)(1), not to a motion brought under Rule 37(c) for a failure to disclose).
[54] *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).
[55] *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 645 (8th Cir. 2022) (quoting *Wegener*, 527 F.3d at 692).

six months before his deposition—they had no basis or excuse to sit on them as long as they did. Waiting until the eve of the deposition to turn the texts over was not substantially justified.

Nor is it harmless. Monument's counsel was caught off guard by the last-minute disclosures, which came while she was driving across the state. The information produced—328 pages of PHI laden text messages from Samuelson's phone—went directly to a key issue in the case: whether his termination was legitimate or pretextual. The delinquent arrival of this information, the day before Samuelson's deposition, caused counsel to cancel both his and Murray's depositions, resulting in Monument having to incur significant, unnecessary expenses. Those expenses include charges for its counsel's travel, lodging, meals, and incidentals and for her time preparing for the two depositions, reviewing the late-disclosed documents, drafting the sanctions motion, and replying to Samuelson's opposition to it.

Counsel for Samuelson's offers to explain the documents, while laudable, were not sufficient to cure the prejudice to Monument of the untimely disclosures. That prejudice is not, as Monument readily admits, so great though that it cannot be remedied.[56] A compensatory expense sanction is all that is needed to redress the situation and what the Court will impose.

## CONCLUSION

Samuelson's 328-page document dump—16 hours before his deposition—was untimely, especially since he and his counsel had the documents in their possession for six months or more. The belated disclosure of them caused his and Murray's depositions to be canceled. And the tardy production of these documents was neither substantially justified nor harmless. Monument

[56] Dkt. No. 54 at 14.

incurred expenses in conjunction with the depositions and the filing of its sanctions motion that it is entitled to be reasonably compensated for.

## ORDER

ORDERED that Monument submit an affidavit with an itemized statement of the expenses and attorney's fees incurred in connection with the depositions of Samuelson and Murray on February 12–13, 2026 in Rapid City. It is further

ORDERED that Samuelson may respond to Monument's submissions within 14 days of their filing. It is further

ORDERED that Monument may reply to Samuelson's response within 7 days of its filing.

## OBJECTIONS

Monument's motion for Rule 37(c) sanctions[57] has not yet been fully decided. The objection period, therefore, will not begin to run until the monetary sanction amount has been ruled on. That way any objections—to this order and the sanctions figure—can be consolidated and made at one time.

DATED this 30th day of June, 2026.

**BY THE COURT:**

[signature]

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

[57] Dkt. No. 53.