UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| RODNEY M. SAMUELSON, M.D., Plaintiff, vs. MONUMENT HEALTH, INC., f/k/a REGIONAL HEALTH, INC., f/k/a MONUMENT HEALTH PHYSICIANS, INC., f/k/a REGIONAL HEALTH PHYSICIANS, INC.; and MONUMENT HEALTH RAPID CITY HOSPITAL, INC., f/k/a RAPID CITY REGIONAL HOSPITAL, INC., Defendants. | 5:23-CV-05091-CCT<br><br>ORDER FOR EXPENSES AND ATTORNEY'S FEES |

Monument Health, Inc. ("Monument") prevailed in its motion for sanctions against Rodney Samuelson ("Samuelson") after an eleventh-hour document dump forced the cancellation of two depositions.[1] In its expense affidavit, Monument asks for $8,483.50 in attorney's fees spent on the canceled depositions, $733.91 in costs for traveling to the depositions, and $8,160.80 in fees to prepare the sanctions motion: totaling $17,378.21.[2] Samuelson resists, asserting that Monument's ask is

[1] Dkt. No. 78.
[2] Dkt. No. 81.

duplicative and unreasonable.[3] After careful review and consideration, the Court grants Monument fees and expenses in the amount of $11,980.71.

## BACKGROUND

The facts leading to the sanction are in the Court's prior order.[4] In summary, Samuelson, a neurosurgeon, sued Monument, his former employer, for violations of the Americans with Disabilities Act ("ADA").[5] Monument maintains that it fired Samuelson for policy and HIPAA violations—texting and emailing confidential patient health information ("PHI") on his personal phone.[6] Samuelson disputes Monument's proffered reasons for termination, alleging that they were pretextual—he says it was common practice for Monument employees to text and email PHI on their personal devices.[7]

The afternoon before Samuelson's deposition—to be followed by Jenni Murray's—counsel for Monument made the five-and-a-half-hour drive from Sioux Falls to Rapid City.[8] That evening, Samuelson's counsel dropped 328 pages of discovery on Monument, less than 16 hours before Samuelson's deposition.[9] These

[3] Dkt. No. 85.
[4] Dkt. No. 78.
[5] *See generally* Dkt. No. 1.
[6] Dkt. No. 59-1.
[7] Dkt. No. 58 at 1–7, 18.
[8] Dkt. Nos. 64-3; 55-7.
[9] Dkt. Nos. 55-7 at 5; 55-8.

documents went to the heart of the case—screenshots of text messages containing PHI between Samuelson and other Monument employees.

Monument's counsel informed her counterpart that because of the eleventh-hour disclosure, Samuelson and Murray's depositions would be canceled.[10] Counsel said that she could not properly prepare for the depositions due to the late disclosure, the volume of documents, and the unidentified participants in the text conversations.[11]

Monument then moved for sanctions, requesting expenses and attorney's fees for the canceled depositions and for bringing the motion.[12] The Court held a hearing on the motion at which Samuelson's counsel admitted that she had the 328 pages of texts in her possession for "six or more months" before turning them over to Monument's counsel the evening before depositions.[13] The Court found a compensatory sanction was warranted and ordered Monument to submit an affidavit of its fees and expenses.[14]

---

[10] Dkt. No. 55-7 at 4.
[11] *Id.*
[12] Dkt. Nos. 53, 54, 63; 81.
[13] Dkt. No. 67 (audio file at 4:20:30–45).
[14] Dkt. No. 78.

## DISCUSSION

### A. Lodestar Calculation

"The burden is on the moving party to prove that the request for attorney's fees is reasonable."[15] The Court will use the lodestar method to determine fees.[16] The lodestar is calculated by "multiplying the number of hours reasonably expended by the reasonable hourly rate."[17] Courts have discretion to cut hours or rates by a flat percentage as part of the lodestar calculation.[18]

Once the lodestar is calculated, there are twelve factors—known as the *Johnson* factors—that are relevant in considering whether that figure should be adjusted up or down: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results

---

[15] *Haukaas v. Liberty Mut. Ins. Co.*, No. 4:20-CV-04061, 2022 WL 1719412, at *8 (D.S.D. May 27, 2022) (quoting *Atmosphere Hosp. Mgmt., LLC. v. Curtullo*, No. 5:13-CV-05040, 2015 WL 1097324, at *1 (D.S.D. Mar. 11, 2015)).

[16] *Wilbur-Ellis Co. LLC v. Sens*, 4:23-CV-04104, 2025 WL 1220437, at *1 (D.S.D. Apr. 28, 2025) ("The court has discretion to decide which method of determining fees is appropriate"), aff'd, 2025 WL 2828598 (D.S.D. Oct. 6, 2025); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996).

[17] *NDN Collective v. Retsel Corporation*, No. 5:22-CV-05027, 2026 WL 1960837 (D.S.D. July 7, 2026) (quoting *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)).

[18] *Jim Hawk Truck Trailers of Sioux Falls v. Crossroads Trailer Sales & Services, Inc.*, No. 4:20-CV-04058, 2023 WL 1825078, at *4 (D.S.D. Feb. 8, 2023); *NDN Collective*, 2026 WL 1960837, at *8.

obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[19] "[T]he most critical factor is the degree of success obtained."[20]

### 1. Reasonable Rates

"The reasonable hourly rate is usually the ordinary rate for similar work in the community where the case is being litigated—here, South Dakota."[21] And a "court can rely on its own knowledge of the market" when deciding what a reasonable rate is.[22]

Recently, two judges from this district found rates of $300 per hour for senior partners, $245 for a junior partner, and $245 for an associate were reasonable.[23] Four years ago, one of the same judges found an hourly rate of $200 for an associate with a federal clerkship, two years of experience, and no particular specialty was reasonable.[24]

---

[19] *See Wilbur-Ellis*, 2025 WL 1220437, at *1 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 434 (1983); *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017)).
[20] *Hensley*, 461 U.S. at 436.
[21] *Wilbur-Ellis*, 2025 WL 1220437, at *2 (citing *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002)).
[22] *Jim Hawk*, 2023 WL 1825078, at *1 (citing *Beyer v. Medico Ins. Grp.*, No. Civ. 08-5058, 2010 WL 199725, at *1 (D.S.D. Jan. 12, 2010)).
[23] *See Wilbur-Ellis*, 2025 WL 1220437, at *2.
[24] *Blue State Refugees v. Noem*, No. 3:21-CV-03024, 2022 WL 1000564, at *3 (D.S.D. Apr. 4, 2022).

The rates for Monument's counsel are reasonable. Two experienced partners billed at $250 an hour.[25] An associate with three years of litigation experience and a one-year clerkship billed at $200 an hour.[26] These rates are in line with—if not below—those in the district and with the Court's knowledge of market in South Dakota.[27] They are acceptable and will not be abated.

**2. Reasonable Hours**

A court "should exclude hours that were not reasonably expended" on the motion at issue.[28] The Court may cut hours by a flat percentage when there is compensable and non-compensable work listed.[29]

**a. Hours Expended on the Attempted Deposition**

Monument requests 33.9 hours of attorney work relating to the canceled depositions, which amounts to $8,483.50.[30] Many of these hours are compensable, but some are not. The Court will shave off 11.55 of those hours totaling $2,887.50.

---

[25] Dkt. No. 81 at 2–3.
[26] *Id.* at 3.
[27] *See Wilbur-Ellis*, 2025 WL 1220437, at *2 (allowing $300 per hour for senior partners, $245 for a junior partner, and $245 for an associate); *see Hoffman v. MJC Am., Ltd.*, No. 4:18-CV-04169, 2019 WL 6134886, at *3 (D.S.D. Nov. 19, 2019) (awarding fees up to $350 for an experienced South Dakota lawyer); *see Blue State Refugees*, 2022 WL 1000564, at *3 (awarding $200 for an associate).
[28] *NDN Collective*, No. 5:22-CV-05027-KES, 2026 WL 1960837, at *9 (citing *Wheeler v. Mo. Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003); *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014) (per curiam)).
[29] *Jim Hawk*, 2023 WL 1825078, at *4 (reducing time entry by 33%); *NDN Collective*, 2026 WL 1960837, at *8 (slashing counsel's hourly rates by 33% in the lodestar calculation).
[30] Dkt. No. 81 at 2.

Drive time, correspondence with opposing counsel, and some of the preparation for the depositions is compensable. But because some of the preparation is reusable, that time will take a flat percentage cut. Also, certain discovery review would have occurred regardless of when it was disclosed; thus, the Court will trim that time.

Counsel for Monument spent 20.9 hours preparing for the two depositions at $250 per hour.[31] This comes to $5,225 for deposition preparation.

Samuelson argues that time spent preparing for Murray's deposition is not compensable because the text messages did not affect that deposition.[32] The Court has rejected this same claim.[33] Samuelson does not get to create the problem and dictate how Monument responds to it. His disclosure was 328 pages of evidence unknown to Monument. Postponing the deposition one day is not per se remedial. The untimeliness of the disclosure applies to both Samuelson's and Murray's depositions.

Samuelson also objects to preparation time as a whole, contending that it "should not be awarded because the entirety of preparation would occur

[31] *See* Dkt. No. 81-1 at 1–2.
[32] Dkt. No. 85 at 7.
[33] Dkt. No. 78 at 11

regardless of the timing of the disclosures."[34] He cites a case from Illinois,[35] in which a deposition was cancelled due to the late production of documents. In that case, the district court did not award sanctions based on the time spent preparing for the depositions because "this time is not wasted."[36] According to the district court, counsel should have "started the deposition on the topics she was prepared for and continued the deposition to reserve the opportunity to question [p]laintiff's expert on the new disclosures if it became necessary."[37]

The Illinois case is distinguishable. There, defense counsel canceled the deposition of plaintiff's expert, after confirming that the deposition would proceed the day before, despite knowing that documents subpoenaed for deposition had not yet been produced.[38] Here, by contrast, the document production was sprung on Monument's counsel while she was enroute to the depositions and with no indication that they would go forward as planned.[39] It was reasonable for counsel to prepare and strategize a second time before deposing Samuelson and Murray.[40]

---

[34] Dkt. No. 85 at 5.
[35] *Barrett v. Brian Bemis Auto World*, 230 F.R.D. 535 (N.D. Ill. 2005).
[36] *Id.* at 537.
[37] *Id.*
[38] *Id.* At 536.
[39] Dkt. No. 78 at 3-4.
[40] *Martinez v. Neiman Marcus Grp., Inc.*, No. 3:05-CV-0422-P, 2005 WL 2179137, at *3 (N.D. Tex. Sept. 7, 2005).

Even so, counsel's preparation time is only partially compensable; a 50% decrease is appropriate. The text messages, contained in 328 pages of documents, had the potential to change the landscape of the case and alter counsel's approach and tactics at the depositions and overall. Starting and continuing them was not a good option given the magnitude of the documents produced. Monument needed time to review and digest the texts and their significance before going ahead with the depositions.

But some of counsel's preparation, before the disclosure of the text messages, is still useful. While important, the texts did not change many aspects of the case, including whether Monument violated the ADA and whether Samuelson contravened Monument policies and federal law (HIPAA). The Court will thus exercise its discretion and reduce the time spent preparing for the depositions down to 10.45 hours and $2,612.50—10.45 x $250 = $2,612.50.[41]

What's more, Monument's review of the texts would have occurred regardless of when they were produced. In its itemized statement, Monument lists 1.10 hours with a value of $275 to begin "reviewing 328 pages of late disclosed text messages."[42] Counsel would have had to read these texts whenever they were

---

[41] *See Jim Hawk*, 2023 WL 1825078, at *4; *NDN Collective*, 2026 WL 1960837, at *8.
[42] Dkt. No. 81-2 at 2.

produced. This time, while a valid client billing entry, is not traceable to Samuelson's sanctionable conduct, and he should not have to pay for it. So, the Court will clip $275 from the requested fees.

### b. Hours Expended on the Sanctions Motion

Monument also requests 41.1 hours and $8,160.80 in fees for filing the sanctions motion.[43] Samuelson insists that the hours and fees are duplicative and excessive.[44] Monument's request is, for the most part, reasonable and even omits other generally compensable remuneration,[45] such as "fees for fees."[46] The Court does, however, see some excess and will pare down the request by 11.7 hours and $2,510.

First, the small cuts. On March 27, 2026, there is an entry with both compensable and non-compensable work.[47] It lists a phone call regarding a "discovery request due April 17, 2026 and status of Reply Brief in Support of Defendant's Motion for Sanctions."[48] The April 17 discovery request is not covered by this sanction and thus not compensable. The Court will not speculate on how

---

[43] Dkt. No. 81-3.
[44] Dkt. No. 85.
[45] *See Black Hills Clean Water All. v. United States Forest Serv.*, 733 F. Supp. 3d 801, 814 (D.S.D. 2024) (citing *Jorstad v. IDS Realty Tr.*, 643 F.2d 1305, 1314 (8th Cir. 1981)).
[46] Dkt. No. 87 at 8 n.4.
[47] Dkt. No. 81-3 at 2.
[48] *Id.*

much of the time stated was devoted to compensable work.[49] 0.2 hours, totaling $50, will be snipped.

On April 2, 2026, there is an entry for review of the order referring the sanctions motion.[50] The entry is in tenth-of-an-hour increments, 0.1 for every 6 minutes.[51] The referral order is very short and should not have taken 7–12 minutes to go through.[52] The Court will prune 0.1 of that entry, or $25.

Similarly, on April 7, 2026, 0.2 hours are billed to read the order setting a hearing on the motion for sanctions.[53] That time is excessive as well[54] and will be chopped in half.

Now, the bigger cuts. On February 13, 2026, 2.7 hours are charged to review 328 pages of text messages.[55] As already discussed, counsel would have had to review these texts anyway. The time is not sufficiently traceable to the sanctioned conduct. It should all be cut—2.7 hours equaling $675.

---

[49] *Wilbur-Ellis*, 2025 WL 1220437, at *2 (refusing to speculate about how much time, in an entry, was spent on compensable work because the requesting party bears the burden of justifying attorney's fees).
[50] *Id.* at 3.
[51] *See id.*
[52] *See generally* Dkt. No. 65.
[53] Dkt. No. 81-3 at 3.
[54] *See generally* Dkt. No. 66.
[55] Dkt. No. 81-3 at 1.

Monument requests 3.3 hours of associate time and 0.3 hours of partner time for the preparation and review of an internal memorandum about seeking sanctions against Samuelson.[56] The motion for sanctions is clearly compensable. Granting fees for drafting a legal research memorandum though is a grayer area. Monument cites cases from New York and New Jersey for support;[57] but the Court is not persuaded. The language of the Court's sanctions order weighs in favor of excluding the memorandum-related work.[58] The Court therefore scratches 3.6 hours of time, totaling $735.

Finally, awarding fees for the supervisory review of certain legal work is consistent with district precedent.[59] But some of Monument's time is over the top. An associate billed 7.8 hours to draft the initial sanctions motion and 9.2 hours for the reply brief.[60] Since the associate was the drafter, and there are hours for partner revisions on the same work product, 17 hours for drafting is more than this Court is willing to award. It will excise 5 hours, at $200 an hour, or $1,000.

---

[56] Dkt. No. 81-3.

[57] Dkt. No. 87 at 9–10.

[58] Dkt. No. 78 at 11–12 ("Monument incurred expenses in conjunction with the depositions and *the filing of its sanctions motion* that it is entitled to be reasonably compensated for") (emphasis added).

[59] *See Buergofol GmbH v. Omega Liner Co., Inc.*, No. 4:22-CV-04112, 2026 WL 26121, at *4 (D.S.D. Jan. 5, 2026); *Wilbur-Ellis*, 2025 WL 1220437, at * 4; *Atmosphere Hosp. Mgmt*, 2015 WL 898178, at *4-5; *but see Emery v. Hunt*, 236 F. Supp. 2d 1033, 1037 (D.S.D. 2002) (an attorney, who was fresh out of law school, should not be reviewing senior attorney's work).

[60] *See* Dkt. No. 81-3.

### 3. The *Johnson* Factors

After considering the *Johnson* factors, the Court does not believe that any further adjustments—up or down—are necessary. On the most critical factor, the degree of success obtained, Monument holds steady; it won the motion and thousands of dollars in fees. As for the other factors, nothing jumps out demanding a variance. The time and labor required is consistent with like situations.[61] The issues raised, and the skill set needed, were not unique. No employment preclusion or time limitations are alleged. The hourly rates are in line with those charged in this locale.[62] Although the amount involved is perhaps on the higher side of the spectrum, it is consistent with comparable cases in the district.[63] The experience, reputation, and ability of counsel are certainly notable, but the Court will not stray from the requested rates because of standing or prestige. Nothing has been said about the "undesirability" of taking on the case. The nature and length of the professional relationship with the client do not call for an adjustment. And the Court has consistently referenced, and used as guidance, awards in similar cases. An alteration of the fee is not warranted.

---

[61] *Wilbur-Ellis*, 2025 WL 1220437, at *5 (awarding 40.4 hours for motion to compel discovery and in preparing fee petition).

[62] *See Wilbur-Ellis*, 2025 WL 1220437, at *2; *Blue State Refugees*, 2022 WL 1000564, at *3.

[63] *Wilbur-Ellis*, 2025 WL 1220437, at *4 (awarding over $11,000 in fees).

### B. Reasonable Expenses

Counsel for Monument also incurred $733.91 in expenses for the fruitless trip to Rapid City. The expenses included $511.86 for mileage,[64] $170.23 for lodging and parking,[65] and $51.82 for two days of meals.[66]

Considering the timing of the disclosure—the evening before the depositions—and that it takes five and a half hours to get back to Sioux Falls from Rapid City, staying overnight was a prudent choice. The mileage, lodging, parking, and meal expenses are reasonable.

Samuelson's contention that he eliminated the travel cost by offering to have the depositions in Sioux Falls does not change the fact that Monument was rightfully billed $733.91 for a wasted trip to Rapid City. Such an offer does not erase these existing costs—even if the rescheduled depositions take place in Sioux Falls. Monument is entitled to reimbursement for its troubles. Samuelson must pay Monument $733.91 for its expenses.

---

[64] Dkt. No. 81-2 at 1.

[65] *Id.* at 2.

[66] *Id.* at 1.

## CONCLUSION

Samuelson's last-minute disclosure of requested documents entitles Monument to the expenses it incurred. Samuelson owes Monument attorney's fees for the attempted depositions, expenses for a wasted across-the-state trip, and fees for the sanctions motion. The Court awards $5,596 in fees for the canceled deposition, $733.91 in trip expenses, and $5,650.80 in fees to prepare and defend the motion. The total comes to $11,980.71.

## ORDER

For the reasons stated and based on the authorities cited and the record now before the Court, it is

ORDERED that Monument's motion for sanctions[67] is granted, in part. Monument is awarded $11,980.71 in expenses and attorney's fees.

## NOTICE

A party may seek reconsideration of both this order and the order for sanctions[68] before a district judge upon a showing that they are "clearly erroneous or contrary to law."[69] The parties have 14 days after service of this order to file

[67] Dkt. No. 47.
[68] Dkt. No. 78.
[69] 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a).

written objections unless an extension of time for good cause is obtained.[70] Failure to file timely objections will result in the waiver of a party's right to appeal questions of fact.[71] Objections must be specific to trigger review.[72]

DATED this 14th day of August, 2026.

**BY THE COURT:**

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

[70] *See* Fed. R. Civ. P. 72(a).
[71] *Id.*
[72] *See Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986).