UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| **RODNEY M. SAMUELSON, M.D.,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**MONUMENT HEALTH, INC., f/k/a REGIONAL HEALTH, INC., f/k/a MONUMENT HEALTH PHYSICIANS, INC., f/k/a REGIONAL HEALTH PHYSICIANS, INC.; and MONUMENT HEALTH RAPID CITY HOSPITAL, INC., f/k/a RAPID CITY REGIONAL HOSPITAL, INC.,**<br><br>**Defendants.** | **5:23-CV-05091-CCT**<br><br>**ORDER RE EXTENDING DISCOVERY DEADLINES, COMPELLING DISCOVERY, AND QUASHING SUBPOENA** |

Monument Health, Inc. and Monument Health Rapid City Hospital, Inc. (collectively "Monument") move to extend discovery deadlines and for a superseding discovery scheduling order.[1] Rodney M. Samuelson, M.D. ("Samuelson"), in response, moves to compel outstanding written discovery, to hold Monument in civil contempt for failing to abide by court-ordered discovery, and for attorney fees related to the motions.[2] Monument also moves for a protective order, asking that the scope and terms of discovery—already ordered—be narrowed.[3] Finally, Samuelson moves to quash subpoenas Monument seeks to serve on Regional West Medical Center ("Regional

[1] Dkt. No. 82.
[2] Dkt. No. 91.
[3] Dkt. No. 102.

West"), his former employer, and Cheyenne Regional Medical Center ("Cheyenne"), a potential employer.[4] For the reasons explained below, the Court will partially compel discovery, will not hold Monument in contempt, and will not award sanctions pending an evidentiary hearing. And the Court will not permit a subpoena to be issued to Cheyenne at this time but will allow Monument to subpoena Regional West. Finally, after the parties have conferred on a discovery deadline date, the Court will amend the scheduling order.

## BACKGROUND

This case has a long—admittedly contentious[5]—history spanning many years. The Court here focuses only on those relevant interactions that have informed its decision.

On October 27, 2025, Judge Veronica L. Duffy issued an order compelling Monument to make discovery disclosures.[6] Judge Duffy instructed Monument to comply with Samuelson's first discovery requests as to Interrogatory Nos. 2, 3, and 4, and Request for Production of Document ("RFP") Nos. 6 and 18.[7] In trying to comply with court-ordered Interrogatory No. 3, Monument claims to have emailed Samuelson on January 26, 2026.[8] While Samuelson insists that his counsel did not receive this email,[9] Monument

[4] Dkt. No. 94.
[5] Dkt. No. 83, at 10.
[6] Dkt. No. 49.
[7] Dkt. No. 49, at 35.
[8] Dkt. No. 84-4.
[9] Dkt. No. 97, at 2.

alleges that one of his attorneys, Sara Frankenstein, replied to that email the same afternoon.[10]

On February 24, 2026, Monument moved for sanctions against Samuelson for a last-minute document dump he made before scheduled depositions.[11] The next day, Monument says it emailed Samuelson all court-ordered discovery except responses to Interrogatory No. 3,[12] which it maintains is unduly burdensome without newly tailored limits. Samuelson contends that he did not received the email, letter, or discovery responses.[13] Monument asserts that it followed up on the February 25 email on March 11, 2026.[14] Samuelson states that he did not receive either transmission.[15]

On March 18, 2026, Samuelson served his second set of written discovery requests.[16] Then, on April 13, 2026, the parties agreed to hold all discovery obligations in abeyance pending a settlement conference.[17] This conference occurred on June 3 and 4, 2026.[18] Right afterward, when settlement negotiations failed, Monument emailed Samuelson addressing difficulties complying with court-ordered Interrogatory No. 3, claiming +460,000 search results.[19] Samuelson responded on June 16, 2026, refusing to cut

---

[10] Dkt. Nos. 100, at 3; 101-1.
[11] Dkt. No. 53.
[12] Dkt. Nos. 83, at 3-4; 84, at 1; 84-1 (discovery responses); 84-5 (letter from Monument to Samuelson concerning court-ordered discovery); 101-3 (email from Monument with letter and responses).
[13] Dkt. No. 97, at 1.
[14] Dkt. Nos. 106, at 4; 101-3.
[15] Dkt. No. 130, at 2.
[16] Dkt. Nos. 82, at 4; 84-2.
[17] Dkt. No. 84-3.
[18] Dkt. Nos. 70; 71.
[19] Dkt. No. 84-6.

terms but setting a more confined date range.[20] Monument proposed a meet-and-confer regarding disputes[21] and counsel for the parties held a phone conference on June 23, 2026.[22] Monument initially agreed to extend discovery deadlines to June 25 and June 29, 2026.[23] Both parties understood the need to extend discovery deadlines,[24] particularly because the scheduling order in place had lapsed on June 12, 2026.[25] During the June 23 phone call, the parties discussed Monument's attempt to subpoena two medical centers related to this case.[26] The first, Regional West, employed Samuelson after his termination with Monument.[27] The second, Cheyenne, remains only a potential employer.[28]

Unable to comply with the extended deadlines, Monument requested, on July 2, 2026, that outstanding discovery be due on August 28, 2026 and discovery close on October 30, 2026.[29] Despite communicating with Monument after this request,[30] Samuelson did not address the request until July 10, 2026,[31] less than an hour after Monument filed an affidavit of expenses in response to the Court's ruling on his document dump.[32] In his July 10 correspondence, Samuelson refused to extend discovery

---

[20] Dkt. No. 84-7.
[21] Dkt. No. 84-8.
[22] Dkt. Nos. 84-9; 91-2.
[23] Dkt. No. 91-2.
[24] Dkt. No. 92, at 5.
[25] Dkt. No. 52.
[26] Dkt. No. 84-9.
[27] *See* Dkt. No. 94.
[28] *See* Dkt. No. 94.
[29] Dkt. No. 84-9
[30] Dkt. No. 84-10.
[31] Dkt. No. 84-12.
[32] Dkt. No. 81; 83, at 8; 84-12.

into August or October 2026, instead giving Monument one week to answer court-ordered discovery and two weeks to answer his March 18 requests.[33]

Finding this timeframe unreasonable, Monument moved for an extension and for a new scheduling order on July 17, 2026.[34] Monument said that August 28, 2026 was a reasonable deadline for its outstanding discovery obligations.[35] In response, Samuelson moved to compel the outstanding discovery, to hold Monument in civil contempt, and to award attorney fees.[36] Samuelson also moved to quash Monument's subpoenas to Regional West and Cheyenne and for a protective order.[37] Monument, in turn, filed a motion for a protective order, wanting the terms of Interrogatory No. 3 limited to better fit the issues of the case.[38]

On August 28, Monument made partial disclosures related to the discovery requested on March 18.[39] Samuelson argues that, while some responses were sufficient to make his motion to compel moot pending a second meet-and-confer, other responses were so deficient that the Court must compel Monument to respond.[40] Finally, on

---

33 Dkt. No. 84-12.
34 Dkt. No. 82.
35 *See* Dkt. No. 106, at 8, 12.
36 Dkt. No. 91.
37 Dkt. No. 94.
38 Dkt. No. 102.
39 Dkt. No. 110, at 2-6.
40 Dkt. No. 110, at 2.

September 16, 2026 Monument sent Samuelson all outstanding court-ordered discovery, except Interrogatory No. 3, that it supposedly sent in the February and March emails.[41]

## DISCUSSION

### A. Outstanding Discovery Disputes.

The ongoing discovery disputes between the parties fall into two categories: discovery Judge Duffy ordered on October 27, 2025 ("court-ordered discovery")[42] and Samuelson's second set of discovery requests ("March 18 discovery").[43] Samuelson seeks attorney fees related to both disputes.[44]

#### 1. March 18 Discovery.

At the time Samuelson sought to compel and Monument moved for an extension of deadlines, Monument had not turned over any of the March 18 discovery.[45] Monument repeatedly professed that a "reasonable deadline" for the discovery request would be August 28.[46]

But Monument only responded in part by that date.[47] Samuelson concedes that, although some of the responses were "evasive, and therefore insufficient," they are

[41] Dkt. 130, at 1.
[42] Dkt. No. 49.
[43] Dkt. No. 91, at 4-7.
[44] Dkt. No. 91, at 7-8.
[45] *See* Dkt. Nos. 83, at 4 ("Monument continues to work on compiling responsive information and documents relevant to [Samuelson's March 18 discovery]."); 92, at 4 (Monument has "failed to produce *any* responses to discovery requested on March 18[.]").
[46] Dkt. No. 106, at 8; *see also* 106, at 12 (March 18 discovery "will be served on or prior to August 28, 2026").
[47] Dkt. No. 110, at 2-6.

"subject to another meet and confer" before a "motion to compel[.]"[48] So, his motion to compel is moot as to responses Monument sent on August 28.

But Samuelson claims that two interrogatories and numerous RFPs had no substantive response beyond boilerplate objections, even after Monument's self-imposed "reasonable" deadline passed.[49] He maintains that the Court should compel answers to Interrogatory Nos. 6, 9, and RFP Nos. 2, 5, 6, 7, 8, 9, 10, 12, 13, 14, 18, 19, 22, and 23.[50]

Parties in a civil dispute may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," subject to limitations on frequency or extent.[51] A party who has responded to discovery requests "must supplement or correct its disclosure or response" in a "timely manner" after learning that the disclosure was incomplete or incorrect.[52] Both Samuelson and Monument were previously admonished that failing to adhere to Rule 26(e) leads to Rule 37(c) sanctions and attorney fees.[53] The Court told them that Rule 26(e) is "not an invitation to hold back material items and disclose them at the last minute."[54]

---

[48] Dkt. No. 110, at 2.
[49] Dkt. No. 110, at 6-7.
[50] Dkt. No. 110, at 6.
[51] Fed. R. Civ. P. 26(b)(1).
[52] Fed. R. Civ. P. 26(e).
[53] *See* Dkt. No. 78, at 5; Fed. R. Civ. P. 37(c)(1)(A) ("If a party fails to provide information . . . as required by Rule 26(a) or (e) . . . [the court] may order payment of the reasonable expenses, including attorney's fees, caused by the failure[.]").
[54] *Hendrickson v. Rapid City*, No. 5:22-CV-5063, 2024 WL 39072, at *4 (D.S.D. Jan. 3, 2024) (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure*, § 2049.1 (3d ed. 2010)).

In response to the March 18 discovery requests, Monument interposed ready-made, all-purpose objections—several of which were merely copied and pasted elsewhere—before stating that "discovery is continuing" and "may be supplemented in accordance with the Federal Rules of Civil Procedure."[55] To date, the Court has received no evidence that Monument's responses have been supplemented.

Monument has a duty to fully respond to discovery requests[56] and to supplement responses when necessary.[57] Its responses are inadequate. Monument does not get to set its own deadline, say to the Court that it is reasonable, promise to fulfill its obligations by that time, and then fail to make substantive disclosures. Over a month and a half have passed since Monument's procedurally-defective initial responses were furnished and no supplementation has occurred. To the extent that Samuelson had an obligation to meet and confer before moving to compel, before August 28, this obligation has been satisfied. The parties engaged in a meet-and-confer phone call on June 23 and Monument expressly rejected the need for a second one.[58] The Court did earlier advise the parties that there is

---

[55] Dkt. No. 110, at 6; *see* Dkt. 111-2, at 3-12.

[56] Fed. R. Civ. P. 33(b)(1)(A); 34(b)(2).

[57] Fed. R. Civ. P. 26(e)(1).

[58] *See* Dkt. Nos. 84-9, at 5 (Monument's attorney confirmed the parties "discussed that both parties respectively need extensions on the outstanding written discovery responses" during the phone call); 111-1, at 4 (Monument's attorney rejecting the need for a second meet-and-confer concerning discovery deadlines).

no obligation to meet and confer when discovery is compelled and sanctions or attorney fees are issued—because of a Rule 26(e) violation—under Rule 37(c).[59]

That said, the Court will give Monument 14 days from the date of this order to complete its March 18 discovery obligations. Samuelson acknowledges that a meet-and-confer is necessary before he can move to compel more complete responses to the requests he deems "evasive."[60] In the interests of an expedient resolution, the Court further directs the parties to meet and confer within 7 days of Monument's supplemental discovery responses to resolve any continuing issues before further Court involvement.

**2. Court-Ordered Discovery.**

Under Judge Duffy's order, discovery falls into two buckets: first, responses to Interrogatory No. 3[61] and, second, responses to all other requests.[62] Samuelson moves to hold Monument in contempt for violating the order, require Monument to comply fully with the order, and to impose coercive daily sanctions for each day of noncompliance beyond the new deadline.[63] While civil contempt is not justified, Monument must answer Interrogatory No. 3.

**a. Interrogatory No. 3**

---

[59] *See* Dkt. No. 78, at 10 (citing *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 707 (8th Cir. 2018); *E&I Global Energy Servs., Inc. v. Liberty Mut. Ins. Co.*, No. 4:20-CV-04033, 2023 WL 372106, at *2 (D.S.D. Jan. 24, 2023)).

[60] Dkt. No. 110, at 2.

[61] *See* Dkt. Nos. 84-4; 101-3; 106, at 3-4.

[62] *See* Dkt. No. 83, at 3-4 (Monument's description of the February 25, 2026 email containing court-ordered discovery on all other requests).

[63] *See* Dkt. No. 92, at 8.

"Civil contempt may be employed either to coerce the [party] into compliance with a court order or to compensate the complainant for losses sustained, or both."[64] The party moving for a civil contempt judgment bears the initial burden of proof, by clear and convincing evidence, that the opposing party violated a court order.[65] Yet "substantial, good faith compliance is a defense to an action for civil contempt."[66]

Sanctions under Rule 37(b)(2) require "an order compelling discovery, a willful violation of that order, and prejudice to the other party."[67] The rule further requires "that the sanctions be just and relate to the claim at issue in the order to provide discovery."[68] A court has "a broad discretion to make whatever disposition is just in the light of the facts of the particular case."[69]

Contrary to Monument's assertion, Judge Duffy's order is unambiguous in both time and terms.[70] Without a set timeline, the Court expected compliance with the order to occur within a reasonable period in light of the nature of the discovery. The parties are represented by competent counsel experienced in discovery disputes; the Court's

---

64 *Chi. Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000).
65 *Jake's, Ltd., Inc. v. City of Coates*, 365 F.3d 896, 899-900 (8th Cir. 2004).
66 *Wycoff v. Hedgepeth*, 34 F.3d 614, 616 (8th Cir. 1994) (citing *Langton v. Johnston*, 928 F.2d 1206, 1220 (1st Cir. 1991); *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989); *Barnes v. Bosley*, 828 F.2d 1253, 1259-60 (8th Cir. 1987)); *see also Bell v. Young*, No. 16-CV-04046, 2020 WL 7127133, at 11 (D.S.D. Dec. 4, 2020).
67 *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999).
68 *Hairston v. Alert Safety Light Products, Inc.*, 307 F.3d 717, 719 (8th Cir. 2002).
69 *Perfetti Van Melle USA, Inc. v. Midwest Processing, LLC*, No. 15-CV-04093, 2015 WL 4068092, at *5 (D.S.D. July 2, 2015) (citing *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1386 (Fed. Cir. 2013)).
70 *See* Dkt. No. 106, at 23 (Judge Duffy's "[o]rder was ambiguous in that it did not contain a deadline for Monument's [responses]").

unwillingness to hold counsel's hand through pretrial litigation or to micromanage the discovery process is not an excuse to engage in gamesmanship. Monument seeks to rewrite the existing order. The Court will not do so. Ten months would, ordinarily, constitute an unreasonable amount of time to comply with a court order and evidence bad faith sufficient for Rule 37(b)(2) sanctions.

The Court, however, must consider the facts of the case and the behavior of both parties throughout the discovery process. Monument's attempts to communicate with Samuelson about Interrogatory No. 3—separate from the disputed attempt on January 26[71] or the two alleged email deliveries discussed below[72]—persuade the Court that contempt is inappropriate.

The parties agreed to stay all discovery in April pending a settlement conference.[73] They participated in such a conference on June 3-4 but were unable to come to an agreement.[74] The next day, June 5, Monument contacted Samuelson specifically to address Interrogatory No. 3.[75] Monument made its position clear: current search terms had supplied +460,000 results or +50,000 pages even when the terms were refined, numbers Monument still considered impracticable.[76] Samuelson responded 11 days later, telling Monument that trimming "search terms or creating a combination of [] terms

---

[71] *See* Dkt. No. 101-1.
[72] *See* Dkt. Nos. 101-3 (February 25 email); 84-2 (March 11 email).
[73] Dkt. No. 84-4, at 1.
[74] Dkt. Nos. 70; 71.
[75] Dkt. No. 84-6.
[76] Dkt. No. 84-6.

would cut out relevant and necessary information," offering instead to limit "the date ranges" to January 2018 through December 2022.[77] Monument responded on June 17, stating that it would comply with that request and proposing that they meet and confer on June 23.[78] After a phone call, Monument made its first request to extend the deadline in a letter dated July 2, 2026.[79] It followed up on this request within a week's time.[80]

Curiously, Samuelson only responded to Monument's repeated requests to extend the deadline and limit the still voluminous discovery on July 10, 2026,[81] 40 minutes after Monument submitted its affidavit to the Court for expenses and fees on a prior sanctions motion.[82] Samuelson's attempts to wield discovery deadlines as revenge for court-ordered sanctions ultimately undermines his argument that Monument engaged in contemptuous conduct. But as the dates above illustrate, this is only the latest example of his unwillingness to meaningfully engage with Monument in the discovery process.

While Monument must be mindful of court-ordered obligations and is cautioned that it cannot claim an order's lack of deadlines as a reason for sidestepping its obligations, the Court spares it the punishment of contempt in light of Samuelson's corresponding gamesmanship. The parties agreed to hold discovery in abeyance until the June settlement conference. Ordinarily, this would not excuse Monument withholding

---

[77] Dkt. No. 84-7.
[78] Dkt. No. 84-8.
[79] Dkt. No. 87-9, at 5.
[80] Dkt. No. 84-11.
[81] Dkt. No. 84-12.
[82] *See* Dkt. Nos. 81; 83, at 8; 84-12.

the discovery through October. But once settlement efforts failed, Monument made diligent attempts to meet and confer with Samuelson about Interrogatory No 3. Samuelson was slow to participate in a worthwhile dialogue to make the scope workable and unreasonable in his refusal to cooperate on deadlines when informed of the difficulty in complying. Given the particular facts of this case and the actions of both parties contributing to the ongoing nature of the present discovery dispute, contempt is not an appropriate sanction.

Still, Monument must expeditiously respond to Interrogatory No. 3. Its motion for a protective order[83] asks the Court, at bottom, to reconsider a prior order issued in the case.[84] Monument seeks a "more concise, better-defined scope of search," ostensibly to help *both* parties avoid undue expense.[85] It alleges that Judge Duffy, without the benefit of hindsight, did not anticipate the breadth of the Interrogatory and, as a result, it must now be retroactively limited.[86] The Court disagrees; Judge Duffy's expectation of what constitutes an overly broad request was not obscure. She specifically contemplated the copious nature of the Interrogatory, likening it to requests finding that "it was not unduly

[83] Dkt. No. 102.
[84] *See* Dkt. No. 49.
[85] Dkt. No. 103, at 13.
[86] Dkt. No. 103, at 12.

burdensome to require a party to review 26,000 files spanning ten years" or to "manually sort through files of all juvenile cases for the past three years[.]"[87]

Samuelson has agreed to reduce the date range to a four-year period.[88] Despite the repeated claim that the results yield as many as 460,000 pages, Monument has also shown the Court that it can limit the purview to a range that Judge Duffy contemplated in her order. Monument has presented various search queries that have returned 21,537 results, 25,673 results, and 25,671 results.[89] All of them fall within the 26,000-file amount she explicitly held to be reasonable.

The Court will not force Samuelson to accept search queries he finds unsuitable for the prosecution of his case. Nor will the Court unilaterally set the search terms or persons that Monument must use. Yet Samuelson has shown himself unwilling to negotiate on the terms in good faith to date. Having already directed the parties to meet and confer concerning supplemental discovery responses to the March 18 requests, the Court instructs the parties as well to meet and confer on the search queries in response to Interrogatory No. 3. Samuelson may insist upon receiving—and Monument must supply—records up to 26,000 pages. What specific terms, dates, or persons such a search should entail is for the parties to agree upon with a 26,000-page ceiling.

---

[87] Dkt. No. 49, at 18 (citing *Haukaas v. Liberty Mut. Ins. Co.*, No. 4:20-CV-04061, 2021 WL 5416251, at *8-9 (D.S.D. Nov. 19, 2021), *adopted as modified*, No. 4:20-CV-04061, 2022 WL 1719412 (D.S.D. May 27, 2022); *Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 457-58 (D.S.D. 2014)).

[88] Dkt. No. 84-7.

[89] Dkt. No. 104, at 2-3.

Samuelson's argument that Monument has been reticent in complying because it has not "asked any of [the ten identified individuals] about their knowledge of any responsive meetings or documents"[90] is legally unsupported and factually illogical. He does not get to dictate how Monument must respond. Monument's choice to use IT to search for documents electronically, rather than question individual employees about potential meetings held as long as eight years ago, is a methodological decision well within its authority. Samuelson is a neurosurgeon, not an HR specialist. Monument's use of search queries to answer Interrogatory No. 3 is acceptable, but by choosing this method, it bears the cost of producing up to 26,000 pages.

**b. Other Court-Ordered Responses**

Besides Interrogatory No. 3, Judge Duffy's order listed several other discovery responses to which Monument had to respond.[91] On September 16, Monument shared, and Samuelson received, documents constituting the remaining court-ordered responses.[92] So, to the extent that Samuelson moves to compel these responses,[93] his motion is moot; any dispute over the quality of these responses is subject to a meet-and-confer before Samuelson may compel supplemental responses.

---

[90] Dkt. No. 123, at 4.
[91] *See* Dkt. No. 49, at 35.
[92] Dkt. No. 130, at 1.
[93] *See* Dkt. No. 91.

The parties dispute when Monument attempted to turn over the documents just mentioned. Ten months between the Court order and substantive disclosure is unreasonable and would warrant an investigation into sanctions and attorney fees. It is not clear though when Monument first attempted to comply with the order.

Monument maintains that it emailed Samuelson a letter with the discovery responses on February 25.[94] Samuelson is adamant that neither he nor counsel received the February letter or responses.[95] Monument also states that it sent a follow-up email on March 11, 2026 discussing the court-ordered responses.[96] Samuelson similarly contends that he did not receive this email either.[97]

Both parties submitted affidavits from IT experts.[98] The Court cannot ascertain from the competing affidavits whether the emails were sent, whether they could not be sent because of technical limitations, or whether Monument was notified that its attempts to email the files failed. Because the factual record developed is insufficient to allow the Court to come to a firm conclusion, an evidentiary hearing must be scheduled where the parties may present additional witness testimony and supporting documents on the issues. While it is within the Court's discretion to order forensic inspections of all relevant

---

[94] *See* Dkt. Nos. 83, at 3-4; 84, at 1; 84-1 (responses); 84-5 (letter to Samuelson); 101-3 (email).
[95] *See* Dkt. No. 97, at 1.
[96] Dkt. Nos. 106, at 4; 101-3.
[97] Dkt. No. 130, at 2.
[98] Dkt. Nos. 124 (affidavit of Monument's expert); 129 (affidavit of Samuelson's expert).

technology,[99] and Monument has made such a request,[100] the Court believes that such a hearing will provide a less-intrusive means of deciding the issues.

The record needs to be augmented before the Court can determine if sanctions should be ordered for conduct relating to the email exchanges. The sanctions issue can be addressed after the Court has the benefit of considering the evidence from the hearing.

**3. Attorney Fees.**

Having compelled Monument to disclose requested discovery, the Court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion [to compel] . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees,"[101] unless the Court finds than an exception applies. At this point, the extent to which sanctions are justified is indiscernible until the discovery disputes, now pending, are all resolved. For the March 18 requests and response to Interrogatory No. 3, this requires the parties to meet and confer. And any sanctions are subject to adjustment based on the evidence presented and factual record developed at the evidentiary hearing. So, any expense and fee request will have to wait until the remaining discovery issues are resolved.

---

[99] *See* Fed. R. Civ. P 34(a)(1).
[100] Dkt. No. 100, at 8.
[101] Fed. R. Civ. P. 37(a)(5)(A).

**B. Subpoenas.**

Samuelson next moves the Court to quash or disallow two subpoenas that Monument wants to serve on Cheyenne and Regional West.[102] Because Cheyenne is only a potential future employer, the information requested in the subpoena is irrelevant and protection is called for. But the information sought from Regional West is relevant and discoverable.

**1. Cheyenne**

When a party to an action requires discovery from a non-party, Rule 45 allows the party to serve a subpoena commanding a deposition or production of relevant documents.[103] "Relevancy" under Rule 26 is broader than what is admissible at trial, as it need only be "reasonably calculated to lead to the discovery of admissible evidence."[104]

While broad, the scope of discovery is not boundless. A court "must limit the . . . extent of discovery" where it "can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]"[105] When the discovery sought "does not reasonably bear upon the issues in the case," the requesting party must make a "threshold showing of relevance."[106]

---

[102] Dkt. No. 94.

[103] *See* Fed. R. Civ. P. 45(a)(1), 30(a)(1), 34(c).

[104] *Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, 784 F.3d 1183, 1198 (8th Cir. 2015).

[105] Fed. R. Civ. P. 26(b)(2)(C).

[106] *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

Monument seeks to subpoena Samuelson's applications for employment and privileges and compensation information from Cheyenne.[107] Samuelson has never worked for Cheyenne and is only a prospective employee.[108] Any potential information to be gained about him, while a candidate for a job with Cheyenne, is irrelevant.

Monument claims relevancy because Cheyenne's records may speak to Samuelson's credibility or duty to mitigate damages.[109] But records generated in connection with the negotiation of possible future employment inform neither of these issues. Monument bears the "initial burden to demonstrate the relevancy" of the requested information.[110] It has failed to clear that hurdle.

Because Monument cannot articulate how unearned potential wages contribute to the mitigation analysis or how Samuelson's employment-related submissions would speak to his credibility beyond speculation, the Court will enter a protective order prohibiting the issuing of a subpoena to Cheyenne. Such an order hinges upon the potentiality of Samuelson's employment. Samuelson must promptly notify the Court and Monument of all employment decisions between Cheyenne and himself, no later than seven days after they occur. The protective order will last for only so long as Samuelson's

---

[107] Dkt. No. 94, at 1.
[108] Dkt. No. 95, at 4.
[109] *See* Dkt. No. 107, at 6-8, 10.
[110] *Colonial Funding Network, Inc. v. Genuine Builders, Inc.*, 326 F.R.D. 206, 212 (D.S.D. 2018).

employment remains potential; should he accept a position with Cheyenne, the requested information becomes relevant to the case and discoverable by Monument.

**2. Regional West**

In its subpoena to Regional West, Monument seeks Samuelson's personnel file, application for privileges, compensation, requests for accommodation and supporting documentation, and documents regarding termination.[111] This information is relevant to Samuelson's claims and duty to mitigate damages under the ADA.

Samuelson is suing for "compensatory and punitive damages including, but not limited to, front pay, back pay, including overtime pay, pension benefits, and other employment benefits" which would have accrued but for the alleged wrongful termination.[112] A party "harmed by discriminatory employment decisions has an affirmative duty to mitigate his damages by reasonably seeking and accepting other substantially equivalent employment."[113] Failing to pursue and maintain comparable employment subjects Samuelson to reductions in any award by the "amount of the wages and fringe benefits" he would have earned.[114] Thus, assessments of "front pay or back pay necessarily involve[] understanding the claimant's post-termination earnings."[115] It

[111] Dkt. No. 94, at 1.
[112] Dkt. No. 1, at 29.
[113] *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 904-05 (8th Cir. 2006) (quoting *Hartley v. Dillard's*, 310 F.3d 1054, 1061 (8th Cir. 2002)).
[114] *Id.* at 905.
[115] *Pearson v. Royal Canin USA, Inc.*, 22-CV-04018, 2023 WL 5916437, at *6 (D.S.D. Sept. 11, 2023) (citing *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 396 (8th Cir. 2011); *Briseno v. Cent. Tech. Cmty. Coll. Area*, 739 F.2d 344, 348 (8th Cir. 1984)).

is "axiomatic" that a defending employer may discover any form of compensation which might mitigate damages.[116] The circumstances surrounding Samuelson's departure from Regional West are relevant to this inquiry as well.

Samuelson alleges that Monument "failed to make reasonable accommodations for his known social/mental limitations both before and after he reasonably notified [it] of his ADA accommodations request."[117] So, to the extent that Monument seeks information relating to Samuelson's subsequent requests for reasonable accommodations, it has a right to that information to prove it provided him with reasonable accommodations, to rebut the allegations in his complaint, and to undermine his credibility.[118]

Samuelson also alleges that he "was and is qualified to be a neurosurgeon for [Monument] . . . with or without reasonable accommodations," that he was "the top student at his medical school[,] and [that he] had two prestigious fellowships."[119] If Samuelson's abilities and professional experience are as illustrious as he claims, they "may present a bar to summary judgment."[120] Because Samuelson has put the question of his professional experience at issue, Monument has the right to investigate the authenticity of his allegations and obtain his personnel file at Regional West.

---

[116] *Id.*
[117] Dkt. No. 1, at 19.
[118] *See Pearson*, 2023 WL 5916437, at *10
[119] Dkt. No. 1, at 21-22.
[120] *Pearson*, 2023 WL 5916437, at *10 (citing *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 975 (8th Cir. 2012)).

Samuelson objects on two important grounds: first, that any information Regional West may have is more readily available from him[121] and, second, that the subpoena is an attempt at harassment or oppression.[122] His objections are hollow ones.

The Court is unwilling to deem Monument's proposed subpoena as harassing or oppressive. All the information requested is relevant to Samuelson's claims and potential recovery. There is no reasonable indication that a subpoena to Regional West, Samuelson's former employer, would impact his potential future employment.

While Rule 26 contemplates limiting discovery where there are more convenient, less burdensome, or less expensive means, it is not for Samuelson "to dictate the scope of discovery" based on his preferred methods.[123] He lacks standing to challenge Monument's use of a subpoena; it imposes no burden or costs on him, and any convenience, burden, or expense Monument bears is of its own choosing. Regional West is "in the best position to provide a complete portfolio[.]"[124] Samuelson's claim that Monument must go through him is erroneous. "[N]o rule exists that discovery must be sought from a party first."[125] And his history of discovery abuse eviscerates the claim.[126] If the Court were to order Monument to try to get the requested material from Samuelson personally, then how could it be certain that there would not be *another* last-minute

---

121 Dkt. No. 95, at 5.
122 Dkt. No. 95, at 6.
123 *Sentis Group, Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014).
124 *Pearson*, 2023 WL 5916437, at *7.
125 *Id.* (citing *EEOC v. Randall Ford, Inc*, 298 F.R.D. 573, 575 (W.D. Ark. 2014)).
126 *See* Dkt. No. 78.

document dump or more haggling about what must be produced? Monument may conduct discovery through whatever vehicle it chooses, and discovery need not proceed in a predetermined sequence before reaching non-parties.[127]

Because Monument's subpoena seeks only relevant, discoverable material from Regional West, and because there are no countervailing interests sufficient to prevent reasonable discovery, there is no basis for a protective order. Of course, any sensitive and personally identifiable information Regional West provides should be redacted before disclosure is made.

**C. Discovery Deadlines**

Monument moved the Court to extend outstanding discovery to August 28 and for a new deadline of October 30. Having explained that Monument must promptly respond to the March 18 requests and court-ordered Interrogatory No. 3, the Court will set the new deadlines. Monument's request for August 28 is evidently moot. Moreover, the deadline for completing discovery—June 12, 2026—has long since passed.[128] Consistent with the district court's referral order[129] and the discussion of the various motions and issues in this order, the Court will fix the discovery dates and deadlines.

Monument must finalize all outstanding March 18 discovery within 14 days of this order, November 6, 2026. Monument and Samuelson must meet and confer by

---

[127] *See* Fed. R. Civ. P. 26(d)(3)(A) ("methods of discovery may be used in any sequence").
[128] Dkt. No. 52.
[129] Dkt. No. 121.

October 30, 2026, 7 days from the order, to agree upon search terms, not to exceed 26,000 pages, for Monument to complete its court-ordered obligations for Interrogatory No. 3. Once sufficient terms are reached, Monument has 30 days to make its disclosure. The Court finds, under Rule 16,[130] that good cause to modify the scheduling order.[131] Neither party followed the order's June 12 deadline. Indeed, the parties met and conferred on June 23 for this exact reason.[132] Monument requested an October discovery deadline[133] while Samuelson proposed July deadline.[134] Rather than unilaterally set what it considers to be reasonable, the Court will let the parties come up with a mutually-agreed-upon discovery deadline for approval when they appear for the November 5, 2026 hearing.

## CONCLUSION

Monument must comply with court-ordered responses to Interrogatory No. 3, but civil contempt is inappropriate in view of Samuelson's continued refusal to meaningfully engage in the discovery process. Because other court-ordered discovery was provided on September 16, coercive sanctions are moot for this disclosure. Monument must also comply with March 18 discovery requests. While Samuelson concedes that it has supplied some answers, albeit evasively, numerous requests were met with legally insufficient responses. Whether sanctions or attorney fees related to these compelled responses

---

130 Fed. R. Civ. P. 16(b)(4).
131 Dkt. No. 52.
132 Dkt. Nos. 91-2; 84-9.
133 Dkt. No. 82.
134 Dkt. No. 84-12.

should be awarded is for another day. Any potential award is subject to adjustments based on the Court's findings after the evidentiary hearing.

Monument's attempt to subpoena Cheyenne is untimely. The requested information is not relevant unless and until Samuelson is hired. The documents requested from Regional West are another story. They speak to Samuelson's claims, his credibility, and his duty to mitigate damages.

Finally, the Court will set deadlines for the outstanding discovery obligations. It will not amend the scheduling order until the parties have had the chance to set their own deadline for the close of discovery. They are to provide the Court with a deadline at the evidentiary hearing; if they cannot do so, the Court will set a reasonable end to discovery.

## ORDER

For the reasons stated, and based on the authorities cited and the record now before the Court, it is

ORDERED that the parties and all relevant witnesses are to appear for an evidentiary hearing to be held in the Fourth-Floor Courtroom of the Federal Building in Pierre, South Dakota on Thursday, November 5, 2026 at 10:00 a.m. central time. While present before the Court, the parties are to present an agreed-upon discovery deadline so that the Court may amend the existing scheduling order. Should they fail to agree on the completion of discovery, the Court will set whatever time it believes reasonable. It is further

ORDERED that Samuelson's motion to compel[135] is granted in part and denied in part. It is granted to the extent that it seeks discovery responses to Interrogatory Nos. 6, 9, RFP Nos. 2, 5, 6, 7, 8, 9, 10, 12, 13, 14, 18, 19, 22, and 23 in the March 18 discovery request, and responses to court-ordered Interrogatory No. 3. It is denied as moot insofar as it seeks to compel March 18 discovery that has been supplied as of August 28 and court-ordered discovery supplied as of September 16. It is further

ORDERED that Samuelson's motion for contempt[136] is denied. It is further

ORDERED that Samuelson's motion for attorney fees[137] is denied, without prejudice. It is further

ORDERED that Monument's motion for a protective order[138] is denied. It is further

ORDERED that Monument and Samuelson are to promptly meet and confer and agree on the appropriate terms and connectors necessary for Monument to respond to court-ordered Interrogatory No. 3. Samuelson may direct the names, terms, and dates to be searched, with disclosure not to exceed 26,000 pages. Monument is to respond within 30 days after receiving Samuelson's terms. It is further

ORDERED that Monument is to turn over all outstanding discovery related to Samuelson's March 18 request by November **6**, 2026, 14 days of this order. Within 7 days

[135] Dkt. No. 91.
[136] Dkt. No. 91.
[137] Dkt. No. 91.
[138] Dkt. No. 102.

of disclosure, Monument and Samuelson are to meet and confer regarding all remaining disputes related to the March 18 request. It is further

ORDERED that Samuelson's motion to quash or to issue a protective order[139] is granted in part and denied in part. It is granted as to Cheyenne. Monument is prohibited from subpoenaing documents from Cheyenne until Samuelson is employed there and only after leave of Court is granted. Samuelson is to notify the Court and Monument within 7 days of Cheyenne's employment decision. The motion is denied as to Regional West. Monument may proceed with this subpoena, but it is to advise Regional West that personal and confidential information must be redacted from any disclosures.

## OBJECTIONS

Not all of the pending discovery motions have been decided. The objection period, therefore, will not begin to run until they have been ruled on. That includes expense and attorney fee awards, if any. The Court does this so that objections—on the motions and any award—can be consolidated, made, and reviewed at one time.

DATED this 23rd day of October 2026.

**BY THE COURT:**

Mark A. Moreno

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

139 Dkt. No. 94.